### STATE v. LESTER ROLLINS.[1]

June 14, 1900.

Nos. 12,153—(18).

#### G. S. 1894, § 6524, Valid.

The "Age of Consent Statute" (G. S. 1894, § 6524), which makes it criminal to carnally know and abuse a female child under the age of sixteen years, is not void for uncertainty, but a valid penal enactment.

#### Same—Contract of Marriage.

Such penal statute does not apply to relations between married persons within the ages authorized by law for entering upon the marriage contract.

[1] Reported in 83 N. W. 141.

**Conviction Sustained by Proof of Connection.**

Proof of any act of sexual connection between the female and the party charged with the commission of the offense will sustain a conviction, and the charge of the trial court to that effect was correct.

Defendant was convicted in the district court for Redwood county, Webber, J., of the crime of carnally knowing and abusing a female child under the age of sixteen years. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*D. A. Stuart*, for apppellant.

*W. B. Douglas*, Attorney General, *C. W. Somerby*, Assistant Attorney General, and *Frank Clague*, County Attorney, for respondent.

LOVELY, J.

Defendant was convicted under G. S. 1894, § 6524, of carnally knowing and abusing a female child under the age of sixteen years. A new trial was denied, from which this appeal is prosecuted.

It is urged for defendant that the statute under which he was convicted fails sufficiently to define a crime. It is conceded that it is a criminal offense to carnally abuse a female child under ten years, but for the reason solely that this age is fixed by common law, rather than by this statute; and that any greater age than the common-law age, adopted by a subsequent statute, is an effort to create a new offense, which subjects the statute to all possible criticisms for repugnancy to the common law, inherent uncertainty, as well as conflict with other statutes affecting the rights of parties to enter into the marriage contract (also regulated by statute), which have long been a part of the civil policy of this state.

We are unable to see how defendant can derive any benefit from this contention. The "Age of Consent Law," so called, is the adaptation of a very old statute (18 Eliz. c. 7) to meet modern conditions and exigencies. It is almost identical in language with a similar statute in every state of the Union, and has been on our own statute books from the organization of the territory. In view of the broad claim of counsel, it is pertinent to turn back to the statute of Elizabeth, where the law had its origin. It reads:

"Whoever shall unlawfully and carnally know and abuse any

woman-child under the age of ten years, shall suffer as a felon without clergy." 1 Hawkins, Pl. C. (6th Ed.) p. 170.

The conclusions of defendant's counsel would perhaps follow if the premises were admitted, viz., that the common law controls the only punishment for carnal abuse of children. It is true that the early crime for abuse of a child was where such child was under ten years, whether it be founded on a statute or on the common law, but the crime charged against the defendant is supported by a statute much more recent than any previous statute or the common law either. The fact that a statute has a common-law origin may be useful in construing it, if there is doubt about its interpretation; but surely the common law cannot affect a penal statute whose terms are definite and certain. It is charged against defendant that he "carnally knew and abused" a female of a certain forbidden age. This seems to furnish a clear and definite idea of an act which the statute declares shall be punished as a felony, and it is this statute which is to be enforced, rather than one more ancient and remote, or an offense depending upon the common law.

It must be apparent that the claim that the statute does not define a crime applies to the earliest, as well as the latest, statute in which the age of capacity to consent is indicated. There is, we think, no particular magic about antiquity that hallows the definition of a crime by mere force of age, and renders an ancient statute good, but forbids the same inference when its settled meaning leads to its re-enactment. We understand the reverse is the rule.

But there is nothing uncertain about the latest act. We do not well see how it could in its terms be plainer, or what could be added to render it more certain.

It is further urged that, besides the inherent uncertainty of the statute itself, an uncertainty arises, or is effected, between this act and the provisions of law authorizing contracts of marriage by females under the age of sixteen years (G. S. 1894, § 4769), and implying, by inference, that marriage will be consummated, in that a lawful relation is authorized in one instance, where, by the statute under which plaintiff was convicted, it is made severely penal in another.

We do not precisely see how the nonconsent statute, which is clear and plain of itself, can be repealed by the former marriage statute, or how any inconsistency between the two benefits this defendant, since it is not claimed that the sexual act in this case was had with his wife; but if the inconsistency which is suggested between the marriage laws and the penal statute really existed, and the conviction depended upon their reconciliation, it would be our plain duty in disposing of the question to hold that the non-capacity statute does not apply to the marriage laws at all. The penal statute specifically provides for cases where there is "abuse," which is the term of the act, and it is not to be assumed that that is "abuse" which the law makes lawful and proper, as the marriage relation. Wherever the word "abuse" came from, in its adoption into this law it refers to and characterizes an illegal, rather than an honorable and proper, relation. The difficulty suggested is not serious. Courts are continually called upon to interpret statutes, to change or modify their literal rendering, to harmonize them with the spirit and policy of existing laws, where the intention of the legislation clearly requires that course. In the language of START, C. J., in a recent case:

"General terms of a statute are subject to implied exceptions founded in the rules of public policy, and the maxims of natural justice, so as to avoid absurd and unjust consequences." Duckstad v. Board of Co. Commrs., 69 Minn. 202, 71 N. W. 933.

We think the present marriage laws of this state may stand in conjunction with the statute under which defendant was convicted. We are inclined to think they harmonize together quite well, and we do not share in the apprehensions of counsel for the rigid enforcement of this statute, nor fear that it will place seducible boys at the mercy of foolish girls under sixteen years of age; for we apprehend that experience will demonstrate that the law is really beneficial. If boys are really in danger from a class of girls who may mislead them, such girls should be thoroughly left alone by susceptible boys. No hurt will follow to either sex from such a course, and it may have been one of the objects of the law to produce such deterrent effect.

But we do not believe any considerable portion of the male youth

of this state are in danger from this statute. They are, for the most part, seriously engaged in their useful occupations, tender and true to woman, whether she be mother, sister, or sweetheart. We do not think that our young men are so much in need of restraint as a more mature specimen of masculinity familiarly known as the "masher,"—a parasite upon woman, rather than her support; very crude in his notions of her better qualities; and selfish and cruel in his conquests over inexperienced females, who may be misled by his baneful attentions, to their own injury, before they are fully aware of the danger they incur, and descend into that social abyss from which return is very difficult. If the statute can deter the operations of the "masher" among young girls—many of whom are unprotected and unrestrained by parental care in the almost unrestricted association of the sexes in our American life—until they are old enough to appreciate fully the consequences of dishonor, some good will result from the statute, particularly if it is effectively enforced,—the good to be realized to society in preserving its best possession, a virtuous woman. It is not our duty to speculate on the objects of this law, further than to discover its plain purpose. The legislature has enacted it, it is clear in its terms, and we see no reason for restricting its enforcement.

The objection to the charge of the court to the effect that proof of sexual penetration will, under the statutory age, prove the commission of the offense, raises the question whether the use of the word "abuse" in the statute ex vi termini implies more in this law than sexual connection. It certainly did not under the original statute, when the age of consent was arbitrarily fixed at ten years, and the better authorities hold that this proof is sufficient in cases of rape upon an adult female. 1 Wharton, Crim. L. (10th Ed.) § 554. This rule of evidence has been adopted by our own statute. G. S. 1894, § 6527. We see no violation to language, good sense, or common decency to hold that sexual connection with a female under the prohibited age, however slight, constitutes abuse, and, in view of the history of the law, we have no doubt that this was its intent when enacted.

Order affirmed.