STATE ex rel. A. A. AMES v. CITY COUNCIL OF CITY OF
MINNEAPOLIS and Another.[1]

July 18, 1902.

Nos. 13,004—(148).

**Mandamus—Mayor's Contingent Fund.**

In mandamus proceedings by the mayor of Minneapolis to compel the
city council to appropriate $5,000 for a contingent fund, under Sp. Laws
1891, c. 138, upon facts which show that the mayor requested such
appropriation, but that the council appropriated only $1,000 therefor, and
after having provided for other legal and proper obligations of the city,
without discrimination against the mayor, was unable, for want of
funds, to make a further appropriation for the contingent fund of the
chief executive. *Held,* that mandamus would not lie against the council.

Alternative writ of mandamus issued out of the district court
for Hennepin county to compel the common council of the city of
Minneapolis to appropriate the sum of $5,000 for the contingent
fund of relator as mayor of said city. From a judgment quashing
the writ, entered pursuant to the findings and order of Elliott, J.,
relator appealed. Affirmed.

*Welch, Hayne & Hubachek,* for appellant.

*Frank Healey* and *Wm. H. Morse,* for respondents.

LOVELY, J.

Mandamus proceedings to compel the city council of Minneapolis
to appropriate $5,000 as a contingent fund for the mayor. Upon
the final hearing the court made findings of fact and ordered judg-
ment for respondent, which was entered, and relator appeals.

The collection of the revenues of the city of Minneapolis, so far
as it is here important to notice, originates upon the action of a
board of tax levy for the county of Hennepin, provided for in Sp.
Laws 1885, c. 84, under which such board is required to meet
annually the second Monday of September, with the right to
adjourn from time to time, not later than October 1. It is made
the duty of this board to fix a maximum rate of percentage of

[1] Reported in 91 N. W. 298.

taxation for assessment purposes, based upon the valuation of the property in the county and city, respectively; and it is provided therein that "no tax shall be levied * * * in excess of the maximum rate * * . * so fixed, * * * and the levy of any tax in excess thereof shall be absolutely null and void." Under the city charter the comptroller is required before September 10 to report to the council an estimate of the current expenses of the ensuing year, with a statement of the amount of revenues received by the city, and, as soon as the state board of equalization has completed its adjustment of the taxable property in the city, to report to the council a computation of the amount of revenues received for the last year, with an estimate of the amount sufficient to defray the current expenses for the next year, to enable the council to determine, among other things, the necessary appropriations to be made for the ensuing fiscal year, to commence on January 1, following. Minneapolis City Charter (1892), §§ 7–10 (pages 68, 69).

On September 30, 1901, the "board of tax levy" established the maximum rate of taxation in compliance with law at the rate of 5.55 mills on the dollar, to apply to all the taxable property in the city, and reported that fact to the council, who by resolution voted to levy thereon the sum of $569,957, in round numbers, which was the aggregate amount attainable through that means. This resolution was approved by the mayor. The available sources of other city revenues for the ensuing year were estimated at $439,223, making a total of $1,009,180, which the city council determined to be the maximum amount that could be expended by the city for the year 1902 on account of the current expense fund, which the court found to be equal to the full amount of all the revenues of the city receivable from taxes and other sources of income during such year, and also found that there were no further funds or revenues of the city applicable to its current expenses for that period. The city council at a meeting October 4 adopted a schedule of appropriations. Immediately previous to such meeting the mayor had requested the council to appropriate for his benefit, as a contingent fund for his individual use, the sum of $5,000. The right of the mayor to this appropria-

tion is provided for in Sp. Laws 1891, c. 138, which authorized and directed the city council to annually appropriate and set aside from the general fund of the city $5,000.00 as a general contingent fund for the use of the mayor, to be under his absolute control to. expend as he should deem best for the interest of the city. Previous to this there had been appropriated for the mayor annually a contingent fund for each year varying in amounts from $1,000 to $2,500. During the last three years preceding 1891 the sum so allowed had been $1,000 each year. At the meeting of the council referred to, a resolution was adopted making necessary appropriations for the payment of salaries to the officers and employees of the city, and various amounts for the incidental and current expenses during the ensuing year. On this schedule there was allowed to the mayor as an "emergency fund" $1,000 only, The total amount of appropriations thus made aggregated the sum which the court found to be the estimated amount of all the revenues attainable by the city for that year.

It is conceded in relator's brief that the appropriations so made were legal and necessary, although one item of $1,000 for the council's contingent fund is questioned, and, if there was any unjust discrimination intended against the mayor in declining to comply with his request, there is nothing in the record to indicate that purpose; and it must be presumed that the city council, in exhausting the attainable resources of the city for necessary expenses, was governed by a fair and equitable purpose to justly, equitably, and legally apportion the attainable income of the municipality. With respect to the appropriation of $1,000 for the council's contingent fund, from anything that appears in the record, we cannot hold that this sum was exorbitant, or that it was not demanded upon a fair and just appreciation of what was actually needed by its governing body. The executive of the city was, however, not satisfied with the appropriation made for his contingent fund, and returned the proposed resolution to the council, with objections, and applied for and obtained, upon his information, an order to show cause why the mandate of the court should not issue to the council, compelling it to appropriate for his benefit the full $5,000, or show cause thereof to the con-

trary. The alternative writ was issued, returnable on the fifteenth of the same month, but the final order of the court was not entered therein until February 21, 1902, when relator's application was dismissed, and judgment ordered for respondent.

It is urged upon this review that the act of 1891 was mandatory upon the council; that, upon the request of the mayor, it was its duty, without reference to the state of the revenues of the city, to appropriate the full sum of $5,000, to be placed in the hands of the mayor, to be used for public purposes as his judgment, upon exigencies to arise, might dictate. Whether a statute is to be construed as mandatory under all circumstances presents a delicate question for the consideration of the courts. Bowen v. City of Minneapolis, 47 Minn. 115, 49 N. W. 683. But general terms of a statute are always subject to implied exceptions, founded in the rules of public policy and the maxims of natural justice, so as to avoid absurd and unjust consequences. Duckstad v. Board of Co. Commrs. of Polk Co., 69 Minn. 202, 71 N. W. 933. Obviously, the intent of the legislature is to be derived from the conditions which led to the enactment of the statute, and the purpose to be accomplished thereby must have an important bearing upon its construction. It is not so important to find an abstract definition that will describe a legislative enactment, as to ascertain what the legislature really sought to accomplish.

It is but reasonable to suppose that the lawmakers assumed that the revenues of the city would be sufficient to enable the council to appropriate the full sum provided for in the act for the mayor, if he demanded it; but the actual possession of the means by which the obligations of the city were to be met is influenced and controlled by other statutes and conditions, creating restrictions and obligations that are at least as imperative as that the mayor should have placed at his disposal for contingent uses a sum of money that he might or might not expend, as his discretion should dictate. The maximum rate authorized by the board of tax levy was not controlled by the council. Upon this rate a certain sum was obtained, which, in connection with all other revenues of the city, did not, as the city council determined in the exercise of judgment, justify it in giving to the

mayor all that he claimed, without compelling a reduction in appropriations for other purposes, which do not, from anything that was made to appear to the court, seem of less consequence. Under these circumstances, it must have been under the contemplation of the legislature in the enactment of the law of 1891 that the contingent fund of the mayor should be $5,000 if he demanded it, but we cannot hold that it was within such contemplation that this required impossibilities or palpable injustice in its practical application. Various other charter provisions of the city of Minneapolis required the expenditure of moneys for necessary and incidental expenses in the operation of the city government, and if, upon a fair consideration of what such necessities were, the city council concluded (and it does not appear that they did not) that there must be an equitable reduction of such obligations in making appropriations, it had the authority to make such reductions.

We must presume, in the absence of any showing to the contrary, that the council acted in good faith in this respect,—particularly in proceedings by mandamus, that depend upon strict legal right. Hence it does not follow that the statute which directs the appropriation of $5,000 to the mayor confers an absolute right, for we cannot believe the legislature intended to give a contingent fund to the mayor, without reference to the state of the revenues of the city, or its capacity to pay the regular salaries of its officers, for the labor of its stipendiaries and servants, or to liquidate the obligations necessarily incurred to run the municipal government, which, of necessity, had to be estimated and acted upon by the council. We therefore conclude that it was the purpose of the legislature in the enactment of this law that it should be subordinate to the real and necessary purposes of applying the actual revenues of the city to all legal demands upon a fair and just appreciation by the council of the best method of meeting them.

Whether the chief executive could not have secured the full appropriation by other proceedings, which included the board of tax levy, and the means by which sufficient revenues could be derived to provide for the same, we need not here determine; but we hold that appellant was not entitled, as of strict legal

right, upon the showing made, to a writ of mandamus to compel the city council to make such appropriation, without considering the further question whether it could be effected in practical results.

Judgment affirmed.