P. A. BAART v. KATHERINE MARTIN and Others.[1]

August 31, 1906.

Nos. 14,709—(94).

**Registration of Title.**

After the expiration of the period fixed by the statute, a title duly and regularly registered under the Torrens system (Laws 1901, p. 348, c. 237; R. L. 1905, c. 65) is, unless such registration was obtained by fraud, indefeasible.

**Fraud—Vacating Decree.**

When the registration of the title to land is secured by fraud, and the owner of the land is not notified, as required by the statute, the decree and the certificate of registration issued thereunder may be vacated and set aside, unless an innocent purchaser for value has obtained rights on the faith of the record.

**Same.**

As long as the title remains registered in the name of the person guilty of the fraud, the decree and certificate of registration may be set aside, in an action brought by the defrauded party within a reasonable time after notice of the fraud.

**Jurisdiction of Court.**

The mere fact that the statute does not in express words except fraud does not deprive a court of equity of the general jurisdiction to protect parties from the consequences of fraud.

Appeals by defendants John Carl and Josephine Carl, and intervenor, Clarence H. Deane, from an order of the district court for Hennepin county, Brooks, J., denying their separate motions to amend and make new findings of fact and strike out and add conclusions of law, or for a new trial. Affirmed.

On September 27, 1897, Katherine Martin and Michael Martin made their promissory note, whereby they promised to pay to Casper Ernst, or order, $1,850, on September 27, 1900. To secure the payment of this note, the Martins executed and delivered to Ernst a first mortgage on lot 1, block 4, in Morrison's addition to Minneapolis.

The mortgage was recorded in the office of the register of deeds for Hennepin county on November 2, 1897. The note and mortgage

[1] Reported in 108 N. W. 945.

were assigned by Ernst to the respondent, Baart, and the assignment was duly recorded in the office of the register of deeds on August 27, 1898. The papers were thereafter in the respondent's possession at his home in Michigan until the commencement of this action. The time of payment was extended, and the interest on the note was regularly paid to respondent up to September 27, 1903. The respondent has resided at Marshall, state of Michigan, since 1883.

On January 31, 1899, Casper Ernst, or some person in his behalf, forged respondent's name to a power of attorney to A. Mueller, an employee of Ernst, purporting to authorize Mueller to foreclose the Martin mortgage. Acting under this forged power of attorney, Mueller went through the form of foreclosing the mortgage because of an alleged default in the payment of interest, amounting to $74, due on September 27, 1898. At the sale on March 22, 1899, the property was bid in in the name of respondent for $2,102.82. At the time of the alleged foreclosure there was no default in the mortgage. Respondent had no notice or knowledge of the power of attorney or the attempted foreclosure until November 15, 1903. On March 21, 1901, Casper Ernst, or some person in his behalf, forged respondent's name to a deed purporting to convey said land to appellant John Carl. Respondent had no notice or knowledge of the existence of this forged deed until November, 1903. In November, 1903, respondent, being then in Minneapolis, arranged with McGowan & Mahoney, of Minneapolis, to look after his matters, including this mortgage, and through them he sent a letter to appellant John Carl, on November 21, 1903. Shortly after this letter was sent, Carl called at McGowan & Mahoney's office and had a conversation with McGowan, in which he said that he had come in response to that letter. McGowan told him they held the Baart mortgage, and that the interest would be payable at their office. Carl was there some time engaged in conversation with McGowan. He appeared nervous and worried over this mortgage. Carl applied to the Minnesota Title Insurance & Trust Company, and obtained a policy of title insurance on said lot for $2,500, dated December 5, 1903. On December 15, 1903, he made and verified his application in writing to have the title to the lot registered under the Torrens law. The application was filed in

the office of the clerk of the district court for Hennepin county on January 23, 1904, and in the office of the register of deeds on January 25, 1904. On January 29, 1904, the application was referred to an examiner, who reported an unincumbered fee title in Carl. The respondent had no knowledge of the pendency of registration proceedings.

This action to foreclose said mortgage was commenced January 2, 1904, and the summons and complaint were served upon Carl and his wife on February 7, 1904. Carl took the summons and complaint so served upon him to the Minnesota Title Insurance & Trust Company on February 18, and made a claim on account of said policy of insurance. The company turned the summons and complaint over to its attorneys, and they prepared the answer to the complaint for Carl and wife. Respondent made his reply thereto, dated March 21, 1904. A notice of lis pendens in the foreclosure suit was filed in the office of the register of deeds on March 3, 1904. March 5, 1904, Carl elected to proceed with his registration proceedings, and the summons was issued in accordance with the examiner's report, and served and published. The respondent, Baart, was not named, but the usual reference was made to persons unknown. The proceedings for registration came before the court for hearing on May 10, 1904. There was no defense, and, on May 11, 1904, a decree was made and the title registered in John Carl as the owner in fee. On September 22, thereafter, Carl deeded the land to the intervenor, Deane. Carl's owner's duplicate certificate was surrendered and the lot was registered in the name of Deane.

The trial court found:

"(a) That as soon as said plaintiff received notice of said forged power of attorney and deed and said unauthorized foreclosure, he caused notice of the facts aforesaid to be given to said John Carl. And ever since December 1, 1903, said John Carl has at all times had full notice and knowledge of the plaintiff's name and address and of all facts hereinbefore set forth, and that said plaintiff had and owned an unsatisfied first lien upon said premises under and by virtue of said mortgage, to secure said sum of $1,850, with interest thereon, together with the sum paid for insurance as hereinbefore set forth, and that neither said forged deed, or any other paper or writing per-

taining to said unauthorized foreclosure, was lawfully of record, and that eliminating such writings, theretofore unlawfully and wrongfully placed of record, said defendants Martin appeared of record to be, as they in fact were, the owners of the fee of said land, and that said plaintiff appeared also of record to be, and was in fact, the owner and the holder of a lien upon said land, unsatisfied and undischarged as hereinbefore stated and shown.

"(b) That immediately upon so receiving notice and knowledge of the facts aforesaid, said John Carl obtained from the Minnesota Title Insurance & Trust Co., a corporation doing business in the city of Minneapolis in said county, its policy or contract of insurance, wherein and whereby said company promised and agreed to pay to said John Carl the sum of $2,500, in case his title to said land should prove to be defective and he be ejected therefrom.

"(c) That thereupon said John Carl, with full notice and knowledge of all the facts aforesaid, sought to secure a registration of his title, under and pursuant to the provisions of chapter 237 of the Laws of 1901, and acts amendatory thereof, and with intent to defraud said plaintiff of his said mortgage lien, sought to obtain such registration in such manner that no notice of the proceedings theretofore should be given to or received by said plaintiff until more than sixty days should elapse after the entry of the decree therein. And with such intent, and having such purpose in view, said John Carl, on January 23, 1904, made application to this court to have the title to said land registered, which application was made in writing, was signed and verified by the oath of said John Carl as applicant, and was filed with the clerk of this court on the day last stated; a duplicate thereof being also, upon the same day, filed in the office of the register of deeds. That although when said John Carl, as such applicant, verified and filed such application, he was fully advised of all the facts above stated, he omitted to make any reference therein to plaintiff's said mortgage, or to his lien upon said premises existing by reason thereof, and, on the contrary, falsely and corruptly averred in said application that he was the owner in fee of said premises; that no person except himself appeared of record to have any title, claim, estate, lien, or interest, in, to, or upon said premises; that the same were not subject to any lien or incumbrance; and that no person ex-

cept himself had any estate or claimed any interest therein or thereto.

"(d) That thereupon said plaintiff, having no knowledge of the pendency of said registration proceedings, or any notice thereof, except such constructive notice, if any, as should be implied from the fact that a duplicate copy of said Carl's application therein was on file in the office of the said register of deeds, brought this action; the summons and complaint therein being personally served upon said defendants Carl early in the month of February, 1904, and being thereupon, and on the 18th day of said month delivered by Carl to his attorneys herein, who were and are also attorneys for the said Title Insurance & Trust Company. And on March 4, 1904, said plaintiff duly filed in the office of said register of deeds a notice of the pendency of this action.

"(e) That because of the false and corrupt statements of fact set forth in said application of said John Carl, hereinbefore mentioned, and not otherwise, the examiner of titles, by his report in said proceedings, made pursuant to section 17, of said chapter 237, did not, as he would have otherwise done, make report that said applicant had no title proper for registration, but did, on the contrary, report that said Carl had title in fee to said premises, free and clear of any incumbrance whatsoever, and did not, as he would otherwise have done, make report that said plaintiff should be made a party defendant therein.

"(f) That on March 5, 1904, said John Carl caused to be filed in said registration proceedings an affidavit of his attorney therein, praying that a summons might issue in said matter, and caused it to be falsely stated and set forth in said affidavit that the only persons to be made defendants in said proceedings were Alzeoir O. Brusha and D. E. Pelo; and by reason of said false application of said John Carl and said affidavit, obtained from this court an order directing its clerk to issue a summons in said proceedings which did not name the plaintiff as one of the defendants therein; and this, although the name and residence of said plaintiff, and his lien and claim of lien to said premises, were not at the time unknown, but were, on the contrary, well known, to said applicant, said John Carl.

"(g) That thereafter such proceedings were had in said registration proceedings that on May 10, 1904, the same came before this court

upon the application of said John Carl for a final decree therein; and at such hearing then had before said court, said John Carl was sworn, and testified, before said court, that there was no mortgage upon said premises, and that he did not know of any lien, claim, or mortgage, or anything against the same; which said testimony so given by said John Carl, as aforesaid, was false and untrue, and was known by him at the time so to be. And thereupon this court, induced by such testimony of said Carl, as well as by the report of the examiner in said proceedings, rendered its final decree therein, confirming the title of said John Carl to said premises and ordering registration of the same, adjudging him to be the owner in fee simple of said real estate, subject only to the rights and incumbrances specified in section 30 of said chapter 237, and to the inchoate right of dower of his wife therein. And a certified copy of said decree was thereupon, and on the 11th day of May, 1904, filed in the office of the registrar of titles in said county, and a certificate, and duplicate certificate of title made and executed in conformity therewith.

"(h) That the summons in said registration proceedings was never served upon the plaintiff herein as required by section 20 of said chapter 237, or otherwise, nor did the clerk of said court mail a copy of said summons to said plaintiff as required by section 20–A of said chapter, nor did his name appear in said decree of registration or in the application or summons, or examiner's report, or in any paper contained in or constituting any part of the files or records in said proceeding. That plaintiff did not appear in any way in said proceedings, or have any notice thereof, or of any of the steps taken therein, until October 5, 1904, when said plaintiff ascertained, and for the first time received, notice of said pleadings from reading the complaint of said intervenor herein, and the proposed supplemental answer of said defendants Carl, together with the affidavits thereto attached, which were served upon plaintiff's attorneys herein on the twenty-third day of September, 1904.

"(i) That on September 22, 1904, said John Carl and his said wife, executed and delivered to Clarence H. Deane, the intervenor herein, a quitclaim deed of said premises; and thereupon, upon the presentation of said quitclaim deed in the registrar of titles, the said certificate of title theretofore made was canceled, the duplicate certificate there-

tofore issued to said John Carl was surrendered and canceled, and a new certificate of title to said intervenor thereupon entered by said registrar, and a new duplicate certificate thereupon issued and delivered to him. That said defendants Carl received as consideration for said deed, the sum of $2,500 in cash, no part whereof was paid by said Deane. That said Deane received such title as was conveyed by. said quitclaim deed, if any title was in fact conveyed thereby, for the use and benefit of the said Minnesota Title Insurance & Trust Company, by which the said sum of $2,500 was paid to said Carl. That said intervenor, Clarence H. Deane, did not purchase from said defendants Carl said premises in good faith or for value. That at the time said quitclaim deed was so given and received, and said sum of $2,500 paid therefor, said intervenor, and the said Minnesota Title Insurance & Trust Company, and each and both of them, had full notice and knowledge of all facts hereinbefore stated and found, and the sole motive and purpose of said intervenor and the said company in procuring said quitclaim deed, and in the payment of said sum of $2,500, was to enable said Deane to intervene herein, and, together with the said defendants Carl, falsely assert the claim and alleged defense that said Deane was an innocent purchaser of said land, and thereby defraud said plaintiff out of his lien and claim under said mortgage.

"(j) That all sums of money which had been paid to the registrar of titles of said county prior to the trial of this action, as provided in section 83, of said chapter 237, of the Laws of 1901, did not exceed in the aggregate the sum of $475.

"(k) That the decree of registration hereinbefore mentioned was not at the trial of this cause offered in evidence by or on behalf of the defendants Carl, or either of them. That said decree was offered in evidence by said intervenor alone, and was received in support of the allegations of his intervening complaint herein, and not otherwise. And no evidence was offered at said trial by said intervenor, or received in his behalf, tending to show any taxes paid or improvements made upon said mortgaged premises."

A judgment and decree was ordered, annulling and canceling the power of attorney, the sheriff's certificate of sale, and all papers referred to therein, the warranty deed, the decree of registration, and all

certificates of title entered or issued in pursuance thereof, and so far as it in any wise impairs or affects the plaintiff's lien on the real estate under and by virtue of his mortgage and directing the foreclosure of the plaintiff's mortgage and the sale of the lot thereunder.

*Tryon & Booth,* for appellants.

*Flannery & Cooke,* for respondent.

ELLIOTT, J. (after stating the facts as above.)

The appellant Deane makes numerous assignments of. error, and four of them are also assigned on behalf of the appellants Carl. The intervenor questions the correctness of the conclusions of law, and especially of the findings of fact: (1) That Carl had notice of the rights of Baart before the summons in the foreclosure suit was served upon him; (2) that Baart had no notice of the registration proceedings; (3) that the Title Insurance & Trust Company and the intervenor, Deane, had notice of the fraud by which the registration of the title was secured; and (4) that Deane was not a bona fide purchaser for value. We do not find it necessary to discuss these issues of fact, as we are convinced that there is ample evidence to support the findings.

1. The fact that Baart claimed a mortgage lien upon the land in question was known to Carl before he obtained title insurance, and before he filed the application for registration. It was therefore necessary that Baart's name should appear in the summons. State v. Westfall, 85 Minn. 437, 443, 89 N. W. 175, 89 Am. St. 571; Ware v. Easton, 46 Minn. 180, 48 N. W. 775. In order that the examiner may be able to know and report to the court who are necessary parties, the law contemplates and requires that the applicant shall in good faith give the information in his application which is required by section 3375, R. L. 1905. When the name of a claimant is known to an applicant, either from the report of the examiner, as in Dewey v. Kimball, 89 Minn. 454, 95 N. W. 317, 895, 96 N. W. 704, or from other sources, the summons cannot be served on such claimant by publication unless his name appears in the summons. As he is not an "unknown party" the concealment of his claim is a fraud on the court, and the decree therein entered is as to him of no force and effect.

2. It is contended by respondent that Carl could not obtain an indefeasible title under the Torrens law, because his claim rested upon a forged instrument which conferred no rights whatever upon him. This contention rests upon the theory that a person is entitled to register a title which he already has, and that registration alone cannot create a title. We think the purpose of the statute was to create an indefeasible title in the person adjudged to be the owner, and who thus becomes the original registered proprietor. In the absence of fraud, the decree is final, unless reversed or modified as authorized by the statute. The instruments produced at the hearing to establish the applicant's title are evidence upon which the court is required to act, and its conclusion, as embodied in the decree, is conclusive. A subsequent registration obtained through the instrumentality of a forged deed would be governed by different considerations. As is well known, the Torrens system, originated in South Australia, and has for years been in force in the states of the Australian confederation and in New Zealand. With various modifications, it has been adopted in Massachusetts, Illinois, California, Oregon, Minnesota, Colorado, Hawaii, the Phillipine Islands, Ontario, and Manitoba. These statutes differ somewhat in their details, but the primary purpose of all is the creation of an indefeasible title in the registered owner, and the simplification of the transfer of land.

There has been a difference of opinion as to the nature of the title which is subject to registration under these statutes. It was inferred from the case of Gibbs v. Messer (1891) App. Cas. 248, and held by numerous decisions, that the system is intended to confer an indefeasible title upon one only who deals with a person actually registered, and deals with him on the faith of the register. The full force of the argument in favor of this view appears in the following language quoted from Mere Roihi v. Assets (1902) 21 N. Z. 691, 715. This was a case where the land had been registered by mistake. The court said: "It is unconscientious and unjust that any person not being a purchaser for value and in good faith should retain an estate without right or title merely because he happened to be entered upon the register as owner of such estate. * * * The statute was not passed for the purpose of enabling such persons unjustly and unconscientiously to retain the estates of others, but for the purpose of

simplifying the title to and the dealing with estates in land." But other courts accepted a broader view, and held that the system contemplates conferring a good title for all purposes on a person who, but for his certificate, would have no title at all. This view, which, of course, does not include cases of fraud, is now established in the states and colonies subject to the appellate jurisdiction of the Privy Council. It was recently held in Assets v. Mere Roihi (1905) App. Cas. 177, that the merely erroneous registration and certification of an invalid title affords no ground for impeaching the statutory title of an original proprietor. A title may thus be created by the decree and certificate of registration. In this case no distinction is made between an original proprietor and one who has been placed on the register in succession to another registered proprietor. This may be correct, possibly, where the subsequent change in the register is the result of a mere mistake; but a registered proprietor can never be deprived of his title through the instrumentality of forged instruments. Gibbs v. Messer, supra.

3. But the important and controlling question in this case is: Can a decree of registration under the Minnesota Torrens law be attacked on the ground that it was obtained by fraud? The appellants rest their case squarely upon the words of the statute, and earnestly contend that the legislature intended to enact a law which, after the expiration of sixty days from the entry of the decree, would vest in the registered owner an absolutely indefeasible title, even though the registration was secured by the fraudulent practices of the person in whose name the land was registered. The Minnesota statute contains no express exception in favor of the owner of land which has been fraudulently registered in the name of some other person. The argument is that the importance of making the title absolutely indefeasible after the expiration of the period of limitation induced the legislature to depart from the ordinary rule, and permit a party who has been guilty of fraud to retain the benefits thereof, saving only for the defrauded landowner his right of action against the party guilty of the fraud, and a claim against the insurance fund provided for by the statute. The present case well illustrates the utter inadequacy of such remedy. The legislature never consciously

provided a method by which such an unconscionable scheme might be successfully consummated.

(a) An examination of the Torrens laws of the different states and colonies discloses the fact that those of Minnesota and the Fiji Islands only contain no express exception of cases of fraud. All the original Torrens statutes carefully guard against the possibility of an owner being fraudulently deprived of his property.

That this important feature is sometimes overlooked is illustrated by a recent book on "Registering Titles to Land" by Jacques Dumas. It is there asserted that security and protection are in all cases obtained by combining two principles: (a) That registration can never be subject to rectification; and (b) that where a mistake has been made, the person suffering the injury is entitled to compensation out of the public funds according to the fact of liability. "There is an exception to the first of these principles," says the author (p. 94) "in all other countries than Australia, when it is proved that registration has been obtained by fraud or error. But this exception does not weaken in the least the warranty afforded by registration since it has no effect on a bona fide purchaser for value." Elsewhere (p. 37), in speaking of certain European systems, the writer says: "Another difference from the Australian system is that * * * whenever registration has been obtained by fraud, error, or compulsion, or when one of the parties is incapacitated, rectification can be obtained. This is subject, however, to the rights of third parties when acquired for value and in good faith in reliance on the correctness of the register."

As a matter of fact, all the Australian statutes provide that registration obtained by fraud is invalid, except as against bona fide purchasers for value upon the faith of the register. Under certain sections of the parent acts, a certificate of title is declared to be conclusive evidence of the proprietor's title to the land, but other sections which are to be read as provisos introduce exceptions to this conclusiveness. Marsden v. McAlister, 8 N. S. W. 300. A certificate of title, therefore, though properly registered and authenticated, is only conclusive, until it is shown to fall within one of the recognized exceptions. Wadham v. Buttle, 13 S. A. L. R. 1; Main v. Robertson, 7 A. L. T. (V) 127. In Hogg, Australian Torrens System, 823, it is

said: "Apart from any question of the special rights of the crown there seem to be three classes of cases in which the certificate of title will not be conclusive, viz.: (1) Where a certificate of title of earlier date is in existence; (2) where the land has been made the subject (wholly or partially) of a certificate of title by mistake; and (3) where the certificate of title has been obtained by fraud." The South Australian statute (Act No. 380, 1886, § 69) provides that: "The title of every registered proprietor shall, * * * be absolute and indefeasible, subject only to the following qualifications: (1) In case of fraud, in which case any person defrauded shall have all rights and remedies that he would have had if the land were not under the provisions of this act. Provided that nothing included in this subsection shall affect the title of a registered proprietor, who has taken bona fide for valuable consideration, or of any person bona fide claiming through or under him." In New Zealand (Act 1885, §§ 56, 182), it is provided that: "No action for possession or other action for the recovery of any land shall lie or be sustained against the registered proprietor under the provisions of the act for the estate or interest in respect to which he is so registered, except in any of the following cases, that is to say: * * * (3) The case of a person deprived of any land by fraud as against the person registered as proprietor of such land through fraud, or as against a person deriving otherwise than as a transferee bona fide for value from or through a person so registered through fraud." In all other cases the register is conclusive; any rule of law or equity to the contrary notwithstanding. This provision is also found in the Tasmania statute (25 Vic. No. 16, 1862), which also provides that the holder of a registered title is entitled, except in cases of fraud, to hold the land subject to the liens excepted by the statute, and gives a right of action for damages against the party guilty of the fraud.

Practically the same provisions are found in Queensland. Act 1861, §§ 44, 123, 126; Western Australia Act 56 Vic. No. 14, 1893, §§ 68, 199, 201; New South Wales Act, No. 25, 1900, §§ 42, 43, 124, 126; Victoria Act 1890, No. 1149, §§ 74, 205, 207.

The Manitoba Real Property Act, 1 & 2 Edw. VII, c. 43, § 71 (2 R. S. Manitoba 1902, c. 148), makes the certificate conclusive evidence that the person named therein is the owner of the land, subject to

the statutory exceptions and the right to show fraud wherein the registered owner, mortgagee, or incumbrancer has participated or colluded. The acts also provides that: "Nothing contained in this act shall take away or affect the jurisdiction of any competent court on the ground of actual fraud, or over contracts for the sale or other disposition of land, or over equitable interests therein." Jones, Torrens System, 337. The Ontario Act 1885 provides that a person who fraudulently procures an entry in the registry is guilty of a felony and "any certificate of title obtained by means of such fraud or falsehood shall be null and void for or against all persons other than a purchaser for valuable consideration without notice." Jones, Torrens System, 143, 144.

The Masachusetts statute (R. L. Mass. 1902, c. 128, §. 37) makes the decree of registration conclusive, "subject, however, to the right of any person deprived of the land or of any estate or interest therein by a decree of registration obtained by fraud, to file a petition for review within one year after the entry of the decree, provided no innocent purchaser for value has acquired an interest." This provision also appears in the Hawaiian statute (R. L. 1905, c. 154, § 2431), and in substance in the Phillipine Act (3 Acts Phillipine Com. No. 496, § 38). In Illinois (Act May 1, 1897 [Laws 1897, p. 141]; Starr & C. Ann. St. Supp. 1902, p. 266, c. 30, par. 48) and Oregon (Laws 1901, p. 438; 2 B. & C. Comp. § 5432), the registered owner shall, "except in cases of fraud to which he is a party or of the person through whom he claims without valuable consideration paid in good faith," hold the land subject only to such estates as are noted or reserved by the statute. In California (Gen. Laws 1903, p. 1397, Act 4115, § 37), it is provided that "In case of fraud any person defrauded shall have all rights and remedies that he would have had if the land were not under the provisions of this act, provided that nothing contained in this section shall affect the title of a registered owner who has taken bona fide, for a valuable consideration or of any person bona fide claiming through or under him."

The Colorado statute (Laws 1893, p. 298, c. 107; 3 Mills, An. St. Rep. Supp. c. 29) is based on the Minnesota statute, and contains no exception of fraud. For the construction of the provisions relating to fraud in the Australian and New Zealand acts, see Assets Co. v.

99 M.—14

Mere Roihi (1905) A. C. 176, and numerous cases cited in the Australian Torrens Digest (1893); 1 Hunter, Torrens Title Cases; Hogg, Australian Torrens System, 833, et seq.

(b) These provisions are omitted from the Minnesota statute. It declares that every person securing a title in pursuance of a decree of registration and every subsequent purchaser of registered land who takes a certificate of title for value and in good faith shall hold the same free from all incumbrances except only such estate, mortgages, liens, charges, and interests as may be noted in the last certificate of title in the registrar's office and except (1) lien claims on rights arising or existing under the laws or the constitution of the United States which the statutes of this state cannot require to appear in the record of the registry; (2) any tax or special assessment for which a sale of the land has not been had at the date of the certificate of title; (3) any lease for a period not exceeding three years when there is actual occupation of the premises under the lease; (4) all public highways embraced in the description of the lands included in the certificates shall be deemed to be excluded from the certificates; (5) such right of appeal or right to appeal and contest the application as is allowed by the act.

The act gives a right of appeal to the supreme court within the time and upon the conditions provided for appeals in civil actions and provides that the decree may within sixty days after it is entered be opened upon the petition of an interested party who had no actual notice of the proceedings. R. L. 1905, §. 3394, requires this petition to be filed within sixty days; although the time within which the decree may be set aside and the original certificate of registration declared invalid is, by section 3396, extended to six months. It also provides that any person interested may petition for the correction of omissions or mistakes but "that this section shall not give the court authority to open the original decree of registration." There is no express provision for vacating a decree obtained by fraud even as against the original wrongdoer and before the rights of innocent parties have attached. It is provided that when an innocent purchaser has acquired rights within the sixty days, the decree shall not be opened, but the "person aggrieved by such decree in any case may pursue his remedy by action of tort against the applicant or any other

person for fraud for procuring the decree." The only other references to fraud are found in the provisions that a person who fraudulently procures the registration of a title is guilty of a felony and
that an action may be brought against the county treasurer for the
recovery of damages out of the insurance fund.

4. If the legislature intended to protect a party, who, by fraudulent
means, obtains the registration of some other person's land in his
name, it should have said so clearly and definitely, and left nothing
to implication. It must be presumed that the legislature understood
and expected that the courts of equity would remain open to parties
who were able to bring themselves within the rules which require
the granting of equitable relief. The fact that a statute does not expressly provide that fraud shall invalidate acts authorized to be done
under it does not deprive the courts of the general power to protect
the rights of parties. The principles which are recognized and enforced in courts of equity underlie our entire system of jurisprudence.
They are no more excluded by the failure to insert an exception in
the statute than by the failure of parties to insert a similar exception
in a private contract. Equity will not allow a party to hold the benefits of a fraudulent transaction although obtained under the forms of
law. It is the just and proper pride of our system of equity jurisprudence that fraud vitiates every transaction. However men may
surround it by forms, solemn instruments, proceedings conforming to
all the details required by the law, or even by the formal judgment
of a court, a court of equity will disregard them all if necessary that
justice and equity may prevail. It has often been held that the general terms of a statute are subject to implied exceptions founded in
the rules of public policy and the maxims of natural justice, so as to
avoid absurd and unjust consequences. Hantzch v. Massolt, 61 Minn.
361, 63 N. W. 1069; State v. Board of Commrs. of Red Lake County, 67 Minn. 352, 69 N. W. 1083; Duckstadt v. Board of Co. Commrs.
of Polk County, 69 Minn. 202, 71 N. W. 933; State v. Rollins, 80
Minn. 216, 83 N. W. 141; State v. Barge, 82 Minn. 256, 84 N. W.
911; State v. City Council, 87 Minn. 156, 91 N. W. 298; U. S. v.
Williams, 194 U. S. 279, 24 Sup. Ct. 791, 48 L. Ed. 979. For English
authorities in which the courts have raised implications when nec-

essary to prevent injustice, see articles in 20 Law Quar. Rev. 399, and 22 Law Quar. Rev. 299.

The rule which authorizes an exception or an evident omission to be read into a statute was applied by this court in State v. Board of Co. Commrs. of Polk County, 87 Minn. 325, 92 N. W. 216, where it was held that the omission from a statute of a provision the absence of which would render the statute unconstitutional would be presumed unintentional. "We are not," said the court, "authorized to indulge in the presumption that the legislature wilfully intended by the passage of this act to depart from the settled law of the land." Hence when necessary to prevent a fraud, a court of equity will read an exception into a statute which is expressed in general terms.

By statute 7 Anne, c. 20, all unregistered conveyances of land were declared fraudulent and void as against subsequent purchasers for a valuable consideration. The statute did not except purchasers with full knowledge, and the courts of law held that a subsequent deed was void, although the party claiming under it had full knowledge when it was executed of the existence of the prior deed. Doe v. Allsop, 5 Barn. & Ald. 142. But the courts of equity, in order "to maintain and extend a righteous and beneficient jurisdiction," ingrafted an exception into the act of Parliament. In the language of Lord Mansfield, "Equity says, if the party knew of the unregistered deed, his registered deed shall not set it aside because he has that notice which the act of Parliament intended he should have." Doe v. Routledge, Cowp. 712. The principle is applied in a line of English cases beginning with LeNeve v. LeNeve, Amb. 436, 1 Ves. 64, 2 White & Tudor L. C. Eq. 109, decided under registration acts which contained no exception of fraud or a provision in favor of bona fide purchasers only.

We cannot presume that the legislature in enacting a law, which was intended to benefit the public, and at the same time fully and adequately protect and guard the rights of individuals, intended, by failing to insert an exception in cases of fraud, to deprive the courts of the universally recognized and established jurisdiction to protect the individual from the consequences of fraud. What we have said applies only so long as the land remains registered in the name of the fraudulent wrongdoer. When the rights of an innocent purchaser for value in reliance on the register are involved, other considerations

prevail. In the case at bar, the court has found that the registration was obtained by actual fraud, and that the intervenor, Deane, was a party to the fraudulent transaction under conditions which supply the moral element which distinguishes actual from so-called legal fraud. We are, therefore, not required to determine whether mere notice of the rights of others constitutes fraud under this statute.

5. An application to vacate the decree, directing the registration of land and the cancellation of the certificate of registration issued thereunder, on the ground that it was obtained by the fraud of the applicant for registration, is governed by general equitable considerations. The Torrens statute makes the provisions of the general statutes relating to the vacating and opening of ordinary judgments, inapplicable. A person who seeks equitable relief must, therefore, proceed promptly after notice of the fraud, and is, of course, subject to all the restrictions and exceptions applicable in proceedings in equity. The sixty-day limitation contained in the statute when these transactions occurred (now made six months by R. L. 1905, § 3396) has no application to the case at bar. If the defrauded party is not guilty of laches, he may attack the decree on the ground that it was obtained by fraud, so long as the land stands registered in the name of the party who was guilty of the fraud. No public policy requires that such a title be indefeasible, or that so tempting a reward be offered for the stealing of land under the forms of law. We have given all the assignments of error careful consideration, but do not find it necessary to discuss them in detail.

The order of the trial court is affirmed on both appeals.