## WASHED SAND & GRAVEL COMPANY v. GREAT NORTHERN RAILWAY COMPANY.[1]

July 9, 1915.

Nos. 19,260—(24).

**Cashman Distance Tariff Act — construction.**

> Chapter 90 of the Laws of 1913, requiring railroad tariffs for transportation to be based upon distance, applies to movement of cars or commodities between stations and not to switching or like movements within a shipping point such as a village or city.

Plaintiff filed its complaint with the Railroad and Warehouse Commission questioning the reasonableness of defendant's rate on washed sand and gravel from complainant's plant, located on Henry's Spur, to points within the city limits of Minneapolis, and asked the commission to establish a reasonable rate. The case was heard by the commission, which rendered its decision that plaintiff's plant was within the switching limits of the station of Minneapolis, that the carrier had the right to establish a reasonable switching charge for the movement of carloads of freight to any point on the line of defendant railway, and ordered defendant to publish a switching rate of $5 a car for the movement of washed sand and gravel from Henry's Spur to all points in the city of Minneapolis. From this order defendant railway appealed to the district court for Hennepin

1 Reported in 153 N. W. 610.

county. The appeal was heard before Jelley, J., who sustained the order of the commission. From the order sustaining the commission, defendant appealed. Affirmed.

*E. C. Lindley, M. L. Countryman* and *Cobb, Wheelwright & Dille,* for appellant.

*Lyndon A. Smith,* Attorney General, *Alonzo J. Edgerton,* Assistant Attorney General, *W. R. Cray, Frank J. Morley* and *S. R. Child,* for respondent.

HOLT, J.

Respondent owns a gravel and sand pit located 700 feet outside the westerly limits of the city of Minneapolis. It is connected with appellant's railway system by a spur track, called "Henry's Spur." For several years respondent has prepared and shipped from this pit washed sand and gravel in carload lots. More than a thousand carloads were moved therefrom in 1913, and about one-third thereof went to points outside the city. The cars not shipped to points outside the city were placed upon side tracks of appellant or of other railroads within the city, there unloaded and used in construction work. Prior to January 1, 1914, appellant moved cars loaded with respondent's product from its gravel pit to any point desired upon the railroad tracks of appellant, or delivered them to any designated connecting carrier in the city, for the uniform rate of $5 a carload, called switching rate. In such movement distance had no particular bearing upon the charge. Subsequent to the enactment of chapter 90, p. 76, Laws 1913,[1] generally spoken of as the Cashman Act, appellant, in conformity to the Schedule of Reasonable Maximum Merchandise and Commodity Rates of the Railroad and Warehouse Commission, promulgated its "Minnesota Distance Tariff on Classes and Commodities," effective January 1, 1914. In this tariff schedule the rate from Henry's Spur to Minneapolis is 1.6 cents per 100 pounds, or upon a car of 100,000 lbs. $16, instead of the former rate of $5. Respondent complained to the Railroad and Warehouse Commission, and it ordered appellant to restore the five dollar carload rate upon movements of respondent's product from Henry's Spur to points

[1] [G. S. 1913, §§ 4348–4357]

130 M.—18.

within the city. Upon appeal to the district court the order of the commission was affirmed and appellant comes to this court.

The Railroad and Warehouse Commission proceeded upon the theory that the tariff schedule, based on the distance transported, promulgated in obedience to section 6 of the Cashman act does not apply to movements within a shipping point. In other words, it applies to line hauls and not to switching movements or drayage movements, or to movements from one place to another within the same city. That as to switching movements, or transportation within a shipping point, the carrier may make a different charge than for a line haul. And since appellant had voluntarily adopted and for some time maintained the switching charge of five dollars from respondent's industry, respondent was entitled, under the provision of section 4292, G. S. 1913, to that rate, until such time as a reasonable switching rate was lawfully established for the movement of all kinds of traffic within the station of Minneapolis. The trial court evidently adopted the same view.

Appellant insists that transportation as referred to in the act embraces all movements of cars whether from station to station or from point to point within the limits of the city where is the station. At any rate, it is contended that when the loaded cars at Henry's Spur are received by appellant and moved to any place within the city of Minneapolis, there is a transportation from point to point within the meaning of the Cashman act. And further it is claimed that when the act speaks of charges for receiving, hauling or delivering freight it refers to unloading, re-crating, warehousing and the like, which does not include switching of any sort.

We do not understand appellant to claim that the location of respondent's industry a few hundred feet outside the city limits is at all important. Nor do we consider it such. The limits of a shipping point or locality are not necessarily the boundaries of the municipality wherein is the station.

The Railroad and Warehouse Commission and the court below, in our opinion, construed the Cashman act correctly. The history as well as the object or purpose of a particular piece of legislation illumines the intent and meaning of the words and expressions

employed in the act. Standard Oil Co. v. United States, 221 U. S. 1, 31 Sup. Ct. 502, 55 L. ed. 619, 35 L.R.A.(N.S.) 834, Ann. Cas. 1912D, 734; Schus v. Powers-Simpson Co. 85 Minn. 447, 89 N. W. 68, 69 L.R.A. 887; State v. City Council of City of Minneapolis, 87 Minn. 156, 91 N. W. 298. The evil aimed at was the inequality of rates which prevailed because the carriers did not consider distance an invariable factor, thus permitting the large distributing points to be favored. It related to discriminations in line hauls from station to station, and not to the movement of cars or commodities within a shipping point. We cannot plead ignorance of the well-known history of the distance tariff legislation. The agitation of the measure, when before the three legislatures preceding the one of 1913, and also during the session of 1913, clearly indicates that the distance provision in the Cashman act refers solely to line hauls between stations, or in other words between shipping points.

The amendment to section 6 of the Cashman act, by chapter 367, p. 500, Laws 1915, passed by the very next legislature, the membership of which was to a large extent the same as in 1913, adds force to the position that transportation as used in the distance-tariff law was never intended to apply to movements of cars within a shipping point.

Appellant makes much of the fact that the Cashman act is very similar to the provisions of the Iowa statute which has been in force in that state for many years. It is argued that, since the legislature of this state did not embody two certain sections of the Iowa law which deal with switching matters, and particularly an amendment of 1911 relating thereto, the intention is clearly manifested to make distance of movement the controlling factor in all transportation charges, no matter whether such movement be a line haul from station to station or it be a switching, drayage or other movement within a shipping point such as a village or city. We are not impressed with the force of the argument. Provisions very similar to the omitted parts of the Iowa law were already upon our statutes (G. S. 1913, §§ 4342, 4359) and the latter section was amended by the legislature which enacted the Cashman law.

It is neither necessary nor advisable to consider the problem of the movement of cars by a common carrier, or the charges therefor, within a shipping point such as Minneapolis. There is need of regulation of charges in such large centers where, to a certain extent, distance enters as a factor in the value of the services rendered. As the law now stands the Railroad and Warehouse Commission has ample power in the premises. If there be a difference in the movement of cars within such shipping district which affects the value of the service depending upon whether it be a switching movement proper, a drayage movement, or a movement which begins and ends as far as the load is concerned within the city, or whether it be made by a switching crew or a regular line haul crew, or under the direction of a yardmaster, or under a train dispatcher, and to what extent distance is to be considered it is all now to be adjusted under the supervision of the commission, and in advance of its decision, the court should not determine the matter.

We have been cited to cases like Dixon v. Central Railway Co. 110 Ga. 173, 35 S. E. 369; Crescent Coal Co. v. Louisville & N. R. Co. 143 Ky. 73, 135 S. W. 768, 33 L.R.A.(N.S.) 442; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 5 Sup. Ct. 826, 29 L. ed. 158; Grand Trunk Ry. Co. v. Michigan Railroad Commission, 231 U. S. 457, 34 Sup. Ct. 152, 58 L. ed. 310, for definition of transportation and its incidents of switching and transfer when certain phases of a common carrier's duties are considered. But little assistance can be had therefrom, because the situation and the questions there presented were entirely different from the one at bar.

Order affirmed.