## COMMERCIAL CLUB OF CITY OF DULUTH v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

December 7, 1917.

No. 20,595.

**Railway — Cashman Act inapplicable to switching rates between city and suburb.**

The Cashman Act (c. 90, Laws 1913), does not apply to switching operations nor to movements from place to place within a city or district which constitutes a single shipping point. Traffic between Duluth station and the suburb of Fond du Lac in Duluth is *held* to be between places within a single shipping point and to this traffic the act does not apply.

From an order of the Railroad and Warehouse Commission requiring the Northern Pacific Railway Company to restore certain switching charges at Duluth, Minnesota, which had been in effect previous to January 1, 1914, the railway company appealed to the district court for St. Louis county. The appeal was heard before Cant, J., who made find-

[1] Reported in 165 N. W. 270.

ings and affirmed the order of the commission. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*Washburn, Bailey & Mitchell, Charles W. Bunn and Charles Donnelly,* for appellant.

*Baldwin, Baldwin & Holmes* and *Lathers & Hoag,* for respondent.

HALLAM, J.

Duluth is a terminal point on defendant's lines. For some years prior to 1914 the whole of the city of Duluth was treated by defendant and the public as a single shipping point or switching district. All transportation between points within the city was governed by a so-called switching tariff, published by defendant and approved by the Railroad and Warehouse Commission. The city was divided into three zones or subdistricts. District No. 3 included the suburbs of New Duluth, Spirit Lake and Fond du Lac, located on a spur line running out of Duluth station. On this spur there are 10 stopping places. Spirit Lake is 9 miles from Duluth, New Duluth 12, and Fond du Lac at the end of the spur is 14. The territory is very considerably occupied as far as New Duluth. Between there and Fond du Lac there is some unsettled territory. At New Duluth and Fond du Lac there are station agents, at Spirit Lake none. Traffic between Duluth and these stations is handled by road engines and billed as line hauls are billed, but sometimes freight moved between switching points is so billed.

The Cashman Act (Chapter 90, p. 76, Laws 1913, G. S. 1913, § 4353), established the distance tariff system within the state, and empowered the Railroad and Warehouse Commission to make a reasonable maximum rate of charges for transportation of freight. On December 10, 1913, the commission issued an order prescribing reasonable maximum distance rates. Defendant thereupon published a tariff and applied this tariff and rate to points between district No. 3 and the rest of Duluth and canceled the switching rates theretofore applicable to this traffic. The distance tariff rate is in some instances higher than the old switching rates. The Commercial Club of Duluth complained to the commission and the commission, after a hearing, ordered the restoration of the old rates. On appeal to the district court, the order was affirmed and the railroad company appealed to this court.

We held in the recent case of Washed Sand & Gravel Co. v. Great Northern Ry. Co. 130 Minn. 272, 153 N. W. 610, that the distance tariff requirements of the Cashman Act do not apply to rates for switching operations nor to movements from place to place within a city or district which constitutes a single shipping point, and that for these operations a rate may be required and charged different from those made applicable to line hauls. Under this decision the traffic excluded from the scope of the act is somewhat more than what is technically known as switching, and is not limited to drayage movements nor to movements auxiliary to a line haul. If transportation between points in district No. 3 and other points in Duluth is to be treated either as a switching operation or as the movement of freight from one place to another within a single shipping point, and not as a line haul, the distance tariff does not apply.

In the case cited we held that the limits of a shipping point are not necessarily coincident with the limits of a city. They may be more extensive. Perhaps they may be less extensive, but usually not. The important question is whether the district is a single industrial center. This is usually a question of fact. The Los Angeles Switching Case, 234 U. S. 294, 34 Sup. Ct. 814, 58 L. ed. 1319. In determining that question, the extent of the district, the industrial relation of one part to another, the nature of the traffic, are things to be considered. Whether the traffic is handled by train crews or switching crews and whether on way bills or switching orders, are matters to be considered, but the manner of handling is not decisive. The fact that the railroad and the public have acquiesced in applying a switching tariff is important when that fact appears, as it does here. All these things are to be taken into account.

The commission and the trial court found that this district was all embraced within a single shipping point. We think the finding is sustained by evidence. It follows, that the whole district was properly governed by what is known as a switching tariff, and that the provisions of the Cashman Act for a distance tariff do not apply. The increase in rates as applied to this district was unauthorized and the order of the railroad commission and of the trial court was right.

Judgment affirmed.