GEORGE E. McQUESTEN *vs.* COMMONWEALTH & another.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

Essex.   January 17, 1907. — March 3, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Land Court*, Jurisdiction, Withdrawal of petition for registration of title.   *Jurisdiction.   Statute.   Practice, Civil*, Exceptions.   *Words*, "Final decree."

By the provision of R. L. c. 128, § 36, that "the applicant" in a petition for registration of the title to land "may withdraw his petition at any time before final decree, upon terms to be determined by the" Land Court, such withdrawal upon terms may be made after a verdict of a jury in favor of the respondent in the petition at a trial of issues framed on appeal by him to the Superior Court from a decision in the petitioner's favor in the Land Court, and after a motion for a new trial has been overruled and bills of exceptions by the petitioner to rulings of the judge presiding at the trial and at the hearing of the motion for a new trial have been filed and allowed.

The "final decree," at any time before which, under R. L. c. 128, § 36, "the applicant" in a petition for registration of the title to land "may withdraw his petition . . . upon terms . . . ," is the decree described in § 39, which is made, according to § 14, after appeals and exceptions, if there are any, are disposed of, and which, when registered according to the provisions of § 40, becomes the certificate of the title.

Under R. L. c. 128, § 36, providing that "the applicant" in a petition for the regis-

tration of the title to land "may withdraw his application at any time before final decree, upon terms to be determined by the court," the Land Court, upon a motion to withdraw being filed by the petitioner after a verdict has been rendered against him by a jury before whom issues were tried on an appeal by the respondent to the Superior Court from a finding of the judge of the Land Court, has no power to impose as terms upon which the withdrawal would be permitted a requirement that the petitioner should either waive exceptions taken by him at the trial in the Superior Court, or prosecute them to final determination; but, in imposing terms, the Land Court is not restricted to taxable costs.

Where, after the trial in the Superior Court of issues framed on appeal from a decision of the Land Court upon a petition for the registration of the title to land, and a verdict against the petitioner, a bill of exceptions taken by him at the trial is filed and allowed but not entered in this court, and he then files in the Land Court a withdrawal of the petition, but the terms upon which, under R. L. c. 128, § 36, the withdrawal would be allowed have not been determined, the proceeding is suspended until such terms are determined and the time has come for the petitioner either to comply with them or to refuse to do so, and the Superior Court has no power in the meantime to order the petitioner's exceptions taken at the trial to be overruled unless they are printed and entered in this court by a certain date.

Petition filed in the Land Court (then called the Court of Land Registration) September 18, 1902, for registration of the title to land, flats and dock known as "Hooper's Wharf," on Front Street in Marblehead.

The facts and the course of the proceedings are stated in the opinion. All hearings in the Land Court were before *Davis*, J. The trial of the issues in the Superior Court and the hearing on the motion of the petitioner for a new trial were before *Lawton*, J. The hearing on the motion that the exceptions taken by the petitioner at the trial before the jury be dismissed for want of prosecution was before *Richardson*, J.

*W. D. Turner*, for the petitioner.

*B. B. Jones*, for the respondents.

Loring, J. On September 18, 1902, the petitioner filed an application for registration of his title to a lot of land bordering on Marblehead Harbor.

The Commonwealth and the town of Marblehead appeared in the Land Court in opposition to this petition, and set up in defense that the locus was subject to the rights of a public landing.

On October 2, 1903, the Land Court entered a decree of confirmation and registration of title in the plaintiff, free of incumbrances. From this decree the Commonwealth and the town of

Marblehead took appeals on issues of fact to be tried in the Superior Court.

Two issues of fact were tried accordingly in the Superior Court, namely, (1) Does a public landing place exist upon the locus by dedication? (2) Does a public landing place exist on the locus by prescription? The jury answered both questions in the affirmative, and on August 22, 1906, a bill of exceptions taken by the petitioner at the trial was allowed by the presiding judge.

Subsequently a motion for a new trial was heard and a supplementary bill of exceptions was allowed on December 11, 1906.

On June 19, 1907, the petitioner filed in the Land Court a withdrawal of his application for registration of title " subject to such terms as the court may fix under " R. L. c. 128, § 36, with a request that such terms should be determined by the court after notice and hearing. Subsequently this withdrawal and motion to fix the terms came on to be heard in the Land Court and was taken under advisement.

Before the Land Court had given a decision on the withdrawal and motion to fix terms, the Attorney General and the town of Marblehead made a motion in the Superior Court that the exceptions taken by the petitioner at the trial of issues in that court should be overruled if not prosecuted within a certain time. Upon this motion the Superior Court entered an order allowing the motion unless the exceptions were entered in the Supreme Judicial Court on or before the first Monday of November, 1907. In pursuance of that order the petitioner's bill of exceptions taken at the trial of the issues of fact was duly entered in this court.

The petitioner also entered a second bill of exceptions founded on the order of the Superior Court directing that his exceptions taken at the trial of the issues of fact should be overruled unless entered in this court on or before the first Monday of November, 1907. " The petitioner objected to the making of said order upon the ground that the withdrawal of the application in the Land Court ended the case, and that thereafter the petitioner could not be compelled to prosecute his exceptions or to proceed further. The said objection was overruled and the petitioner duly excepted."

These two bills of exceptions are the first two cases stated above. They came on to be heard by this court at the Essex term in November, 1907. The hearing on the ·first bill of exceptions was suspended until the question of jurisdiction raised by the second bill should be determined.

Subsequently the Land Court denied the plaintiff's withdrawal "on the ground that the petitioner has no right to withdraw without the permission of the court by determining terms, and that in the present status of the case such permission should not be given." To this the petitioner took an exception, and that is the third of the four cases now before us.

At the hearing in the Land Court on the petitioner's withdrawal, "the Land Court ruled as a matter of law that it lacked the power to impose as terms of a withdrawal a requirement that the petitioner should waive his exceptions or prosecute them to final determination, so that in case the exceptions were overruled the existence of a public landing could be established by the order allowing the withdrawal, and declined to pass upon the question of imposing such terms." To this the respondents took an exception, and that is the fourth of the above cases.

The question underlying all four bills of exceptions is the construction of the last sentence of R. L. c. 128, § 36, to wit, "The applicant may withdraw his application at any time before final decree, upon terms to be determined by the court."

It is plain that in this enactment the Legislature did not adopt or intend to adopt either the rule of the common law or that which obtains in equity in this connection.

In an action at law the plaintiff can become nonsuit at any time before a trial on the merits is begun, not after as matter of right. *Carpenter & Sons Co.* v. *New York, New Haven, & Hartford Railroad,* 184 Mass. 98.

And a plaintiff "cannot discontinue in equity after a decree or other proceeding whereby the defendant's situation has been materially changed, so that he has acquired rights which did not exist or which had not been determined when the suit was brought, and which render it equitable that these rights should be fully secured by further proceedings in the case." *Worcester* v. *Lakeside Manuf. Co.* 174 Mass. 299, 301

When the point is reached that a departure from the rule

which obtains either at common law or in equity was intended, there is no stage in the proceeding which we can say was intended by the words of § 36 "at any time before final decree" short of the entry of the decree provided for by § 39.

A short summary of the nature of the proceedings which are had on filing an application under R. L. c. 128 will make this plain.

Upon the filing of the application, the title in question is referred to an examiner, who deals with it as a conveyancer at common law deals with a title which he is employed to examine. On the coming in of his report (if the plaintiff elects to go on) there is a publication of notice to those adversely interested. After an appearance by those adversely interested and a hearing, a decree of confirmation and registration is entered under § 37. From this decree and from "every order, decision and decree" of the Land Court (see § 13) an appeal lies to the Superior Court if the appeal is based on an issue of fact, and to the Supreme Judicial Court if it is based on a question of law. See § 13. On either appeal being disposed of, the clerk of the appellate court certifies the final decision to the Land Court; and thereupon the Land Court enters "the final decree in the case" in accordance therewith. The final decree of registration is described in § 39 in these words: "Every decree of registration shall bear date of the year, month, day, hour and minute of its entry and shall be signed by the recorder. It shall state whether the owner of the land registered is married or unmarried, and if married, the name of the husband or wife. If such owner is under disability it shall state the nature of the disability, and if a minor, shall state his age. It shall contain a description of the land as finally determined by the court, shall set forth the estate of the owner and also, in such manner as to show their relative priority, all particular estates, mortgages, easements, liens, attachments and other encumbrances, including rights of husband or wife, if any, to which the land or the owner's estate is subject, and may contain any other matter properly to be determined in pursuance of this chapter. The decree shall be stated in a form convenient for transcription upon the certificates or title hereinafter mentioned." This decree is transmitted to the register of deeds, is transcribed in the registration book, and when so transcribed becomes "the original certificate of title" (see § 40).

Although what has been said is enough to dispose of the true construction of the clause of R. L. c. 128, § 36, now under consideration, it is confirmed by a consideration of the provisions on the point now before us in the Australian Torrens Acts from which the Massachusetts Act, St. 1898, c. 562, (now R. L. c. 128,) was drafted.

The Torrens Acts then in force in New South Wales, (Act No. 25, 1862, § 24,) Queensland, (25 Vict. No. 14, § 29, and 41 Vict. No. 18, § 9,) South Australia, (Act No. 380, 1886, § 41,) and Tasmania, (25 Vict. No. 16, § 25,) provided that an applicant might withdraw his application at any time before the issuing of the certificate of title.  The acts in force in Victoria, (Act No. 1149, 1890, § 36,) and Western Australia, (56 Vict. No. 14, § 34,) contained the same provisions with the addition that, if those in opposition should have been put to expense without sufficient cause by reason of such application, they should be entitled to receive from the applicant such a compensation as a judge on a summons in chambers should deem just and order.  Finally, the act then in force in New Zealand provided in effect that, after a defendant appeared in opposition, the application could not be withdrawn without leave of the judge.  (Act of 1885, No. 57, §§ 27, 141.)

It is manifest that the Massachusetts Legislature did not intend to follow that in New Zealand, which made the right of withdrawal dependent on the discretion of the judge, nor those in New South Wales, Queensland, South Australia and Tasmania, where the right of withdrawal at any time before the certificate was issued was absolute and not subject to terms, but did follow that in Victoria and Western Australia, where it is absolute but subject to terms to be imposed by the court.

The *punctum temporis* in all these acts (namely, those of New Zealand, New South Wales, Australia, Tasmania, Victoria and Western Australia) is in substance at any time prior to the issuing of the certificate of title.  It is manifest that the Massachusetts act followed these acts on that point, and that no change was intended in adopting the entry of the final decree in place of the issuing of the certificate of title.  The entry of the final decree is the decisive act; if a final decree is entered, the certificate of title issues as of course.  Since that is so, and since the

certificate of title is a transcription of the final decree, it was more accurate, if one of the two was to fix the time when the right to withdraw should come to an end, to adopt the decree and not the issuing of the certificate.

The view taken of an application for registration and confirmation of title (or, as it is more felicitously termed in the Australian act, an application to bring land within the operation of the act) which led to an absolute right of withdrawal before final decree or its equivalent, the issuing of a certificate of title, appears to be this : Such an application is not, primarily at any rate, the beginning of a controversy between party and party. If such an application is filed, a controversy may and in many cases will result. But the primary object of such an application is to get a certificate of title to the petitioner's land which has the attributes in substance, for practical purposes, of a certificate of title to a share in the capital stock of a corporation. And, treating the application as an application to bring the locus within the new system, if, at any time before the land has been brought within the operation of it, the petitioner changes his mind and on the whole concludes that he prefers to leave his title as it was before the Torrens system was adopted, he shall be at liberty to do so.

To conclude, we are of opinion that under R. L. c. 128, § 36, the petitioner had the right to withdraw when he filed his withdrawal on June 19, 1907, and the petition in question and all proceedings growing out of it were thereby terminated, provided the petitioner complied with such order as might be made by the court in imposing terms upon the petitioner in this connection. In the case at bar the petition had not been finally withdrawn then because the petitioner had not then and has not yet complied with terms fixed by the Land Court. But on the filing of the withdrawal the right to proceed was suspended until the terms had been fixed and the time had come for the plaintiff to comply or not comply with them. It follows that the action of the Superior Court in directing the exceptions to be overruled unless entered in this court was void.

We are of opinion also that the court was right in ruling that it had no "power to impose as terms of a withdrawal a requirement that the petitioner should waive his exceptions or prosecute

them to final determination, so that in case the exceptions were overruled the existence of a public landing could be established by the order allowing the withdrawal." If that could be done, the petitioner would not have the right to withdraw his petition.

Further, we are of opinion that in imposing terms the court is not restricted to taxable costs, but may for example require the petitioner to pay all the expenses of the defendants in the matter.

The entries must be

> *The first bill of exceptions dismissed.*
> *Exceptions in the second and third bills of exceptions sustained.*
> *Exceptions in the fourth bill of exceptions overruled.*