FRANK KOZDRAS & another[1] vs. LAND/VEST
PROPERTIES, INC. & others.[2]

Essex.   December 6, 1979. — December 3, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Real Property*, Registered land: review of decree of registration.  *Fraud.*

In an action seeking restitution of land owned by the plaintiffs prior to
   Land Court proceedings which culminated with the entry of a decree
   for the confirmation and registration of title of the defendants in a
   parcel of land which included several acres of the plaintiffs' property,
   there was sufficient evidence to warrant a finding that false statements
   in the defendants' petition to register the land and supporting
   documents were made in reckless disregard of facts which were suscep-
   tible of actual knowledge [36-45]; in the circumstances, a judgment
   ordering reconveyance of the land to the plaintiffs was appropriate
   [45]. QUIRICO, J., with whom WILKINS, J., joined, dissenting.

CIVIL ACTION commenced in the Superior Court on
November 19, 1975.

A motion for summary judgment was heard by *Dimond,*
J., and the case was heard by *Linscott,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Alex H. MacDonald* for the defendants.
*Gary S. Sackridder* for the plaintiffs.

---

[1] The plaintiffs are Frank Kozdras and Bertha C. Kozdras, husband and
wife.

[2] The defendants, in addition to Land/Vest Properties, Inc., which is a
Massachusetts corporation, include a partnership, a trustee of a realty
trust, a trustee under a testamentary trust, and a number of individuals.
The defendants collectively are a limited partnership under the name of
North Andover Associates, and they are referred to in the opinion as the
"Associates."

*Howard R. Palmer,* Assistant Attorney General, for the Commonwealth, amicus curiae, submitted a brief.

*Norman T. Byrnes & John T. Driscoll, Jr.,* for the Massachusetts Conveyancers Association & another, amici curiae, submitted a brief.

ABRAMS, J.    The defendants (Associates) appeal from a judgment entered by a judge of the Superior Court ordering them to convey to the plaintiffs, Frank Kozdras and Bertha C. Kozdras, husband and wife as joint tenants, certain land in North Andover presently included in a certificate of title issued to the Associates pursuant to a decree by the Land Court.    The Associates concede that the land had been owned by the plaintiffs prior to registration but claim that as a result of the registration proceedings any claim that the plaintiffs had to the land had been extinguished.    The Associates argue that the evidence was insufficient to prove that they acted fraudulently.    They therefore contend that the plaintiffs are not entitled to any relief, and that the judge should have entered a judgment for the defendants.

After a jury-waived trial limited to the issue of fraud,[3] the judge entered findings and rulings which, in substance, concluded that the plaintiffs had proved fraud in the registration proceedings.    The judge found that in the petition to register the land the Associates made statements "which are contrary to fact yet susceptible of accurate knowledge.

[3] In their complaint the plaintiffs among other claims also challenged the constitutionality of G. L. c. 185, § 45, and the failure of the Associates to comply with several sections of G. L. c. 185.    The Associates filed a motion for summary judgment and the motion judge (who was not the trial judge) ruled that the decree of registration "may not be collaterally attacked here in the Superior Court."    See *Bell* v. *Eames,* 310 Mass. 642, 645 (1942).    He also ruled that G. L. c. 185 is constitutional, and that "there were no violations of any constitutional rights of the plaintiffs in connection with any aspect of the Land Court proceedings."    See *Tyler* v. *Court of Registration,* 175 Mass. 71, appeal dismissed, 179 U.S. 405 (1900).    The motion judge left open "only two possible issues, namely, the issue of fraud so far as it might create a constructive trust under the doctrine of *State Street [Bank &]Trust Co.* v. *Beale,* 353 Mass. 103 (1967), or give rise to an action of tort for damages under G. L. c. 185, § 45."    He ordered "that further proceedings in this case shall therefore be limited to the question of fraud just mentioned."

These statements were made as of defendants' own knowledge, but without such knowledge. They are technical and/or constructive fraud." The judge, relying on our decision in *State St. Bank & Trust Co.* v. *Beale,* 353 Mass. 103 (1967), entered a judgment ordering a reconveyance of the land by the Associates to the Kozdrases. The Associates appealed from that judgment to the Appeals Court, and we caused the appeal to be transferred to this court on our own initiative, acting pursuant to G. L. c. 211A, § 10 (A). We conclude that the judge's findings are amply supported by the record. We therefore affirm the judgment.

We summarize the facts as they appear in the findings of the judge and in the record before us. On September 25, 1970, the Associates purchased some unimproved land by a deed which described the land conveyed as follows: "Three certain parcels of land on Salem Street and both sides of South Bradford Street, as shown on Sheets 1, 2 and 3 on a plan of land entitled: 'Plan of Land Owned by Fuller Farm Trust, Located in North Andover, Mass., Dated January, 1970. Charles E. Cyr, Civil Engineer' said plan being recorded in the said [North Essex] Registry of Deeds as Plan No. 6148, and containing collectively 195.9 acres more or less, according to said plan."

At the time of the purchase the Associates through their counsel knew that the seller had deeds for only 34 of the 93.3 acres depicted on sheet 3 (the relevant portion of the Cyr plan). Counsel also knew that the assessor's records showed the seller as the owner of only 32.6 acres in the deeded area.[4] The official plan on file in the assessor's office accurately depicted the location of the Kozdrases' land.

---

[4] A letter from the Associates' counsel to the seller's counsel dated July 7, 1970, states in part: "I would like to know if you are able to justify the area of 93.3 acres shown as Section C on Sheet 3 of the plan by Charles E. Cyr dated January, 1970 (recorded as Plan 6148). It seems to me that your title is based on the deed from William M. Johnson et al to Abijah P. Fuller dated March 15, 1869, Book 94, Page 78, describing a 9 acre parcel, and the deed from Sarah Carleton to Abijah P. Fuller dated January 10, 1888, Book 94, Page 75, describing a 25-acre parcel, thus making a total of 34 acres. I believe the assessors show this area as comprising only 32.6 acres. My

On December 31, 1970, the Associates filed a petition in the Land Court to have their title to the land "registered and confirmed" under G. L. c. 185. In that petition they described each of the three parcels in detail by metes and bounds, with the names of the supposed abutting owners, all as shown on the plan referred to in their deed.

The plan filed by the Associates (the Cyr plan) had been prepared by a private civil engineering firm hired by the seller of the three parcels. This plan did not conform to the official assessor's plan. A rough sketch of the parcel, which differed from the Cyr plan, was brought to the assessor's office for certification of the names of the adjoining owners. The Kozdras plot was shown on the rough sketch as an abutting parcel. The assessor checked the plan submitted by the Associates to see if all the abutters were listed on the plan, then signed it.[5] The Cyr plan, however, included twelve acres owned by the Kozdrases in the parcel to be registered. This was the map that was filed by the Associates with the petition for registration. See G. L. c. 185, § 33.[6]

The petition for registration described the parcel shown on the plan (sheet 3) filed with the Land Court as bound "NORTHERLY and NORTHWESTERLY by land now or formerly of Frank Kozdras, 1113.75 feet." By statute, the Associates

clients naturally expect that they are acquiring 93.3 acres and I presume that Mr. Cyr had some basis for placing the boundary lines where he did. I would appreciate it if you could explain this discrepancy."

The discrepancy was never explained, but the seller added the following clause to the purchase and sale agreement: "Acreage based on tax rolls for the Town of North Andover is what is to be quitclaimed. The excess above that figure is not to be quitclaimed but shall be understood as between the parties to be whatever right, title and interest the first party may own at the time of transfer."

[5]The rough sketch was not checked by the assessor for accuracy of boundary lines. The boundaries of the Kozdras plot as shown on the sketch, while not accurate, were not so different from the assessor's records as to put him on notice of the discrepancy.

[6]The record before us indicates that at no time during the registration proceedings did the Associates file the plan on file in the assessor's office. The record also indicates that at no time did the Associates reveal to the Land Court that they knew that the assessor's plan showed that their seller owned by deed only 32.6 acres with respect to the plan as depicted on sheet 3.

were required to state in their petition "the names and addresses of the adjoining owners and occupants, if known; and if not known, [to] state what search has been made to find them." G. L. c. 185, § 28, as amended by St. 1971, c. 423, § 3. The list which the Associates filed included the name and address of Frank Kozdras. The Associates also listed a mortgage and two easements which affected the parcel but made no reference to the ownership of any right, title or interest in the land by the Kozdrases.

The Land Court, as required by G. L. c. 185, § 37, referred the petition for registration to one of its title examiners to "search the records and investigate all facts stated in the petition, or otherwise brought to his notice, and [to] file in the case a report thereon, concluding with a certificate of his opinion upon the title." The same statute provided that "[i]f the opinion of the examiner is adverse to the petitioner, he shall be allowed by the court a reasonable time in which to elect to proceed further or to withdraw his petition. The election shall be made in writing . . . ."[7] The report of the examiner which was filed with the recorder is not a part of the record before us. However, it must have been adverse to the Associates in some respect because the Associates filed an election, under G. L. c. 185, § 37, to proceed further with the petition.

As a result of the Associates' election, notice of the proceedings was published. G. L. c. 185, § 38.[8] Additionally, the Land Court had a copy of the notice sent by registered mail to Frank Kozdras, as required by G. L. c. 185, § 39. The notice, as published, and as mailed to and received by Frank Kozdras,[9] contained virtually the same description of

[7] The section was amended by St. 1977, c. 151, § 1, by eliminating the requirement that an election be made.

[8] At that time, G. L. c. 185, § 38, provided in part that "if the petitioner, after an adverse opinion of the examiner, elects to proceed further, the recorder shall, immediately upon the . . . filing of the petitioner's election . . . cause notice of the filing of the petition to be published in a newspaper published in the district where any portion of the land lies."

[9] Since the plaintiff Bertha Kozdras does not rest her claim on the failure of Associates to send her notice, and since she did not appeal from the

land which was contained in the petition filed by the Associates, and listed Kozdras as an owner of abutting land. This was the only notice received by the Kozdrases. They had no notice that their land was actually included in the plan that was filed and used to identify the parcel being registered.[10] The notice gave no indication that the Cyr plan differed from the plan in the assessor's office. Nothing in the plan filed or the notice sent gave any indication of the fact that the Associates knew that their seller had deeds for less than 34 of the 93.3 acres shown on the relevant section (sheet 3) of the Cyr plan.

The notice sent made reference only to the Cyr plan as filed with the petition in the Land Court. It also stated that any person who desired "to make any objection or defense to said petition" had to file a written appearance and answer with the Land Court on or before August 23, 1971, and that "[u]nless an appearance is so filed by or for you, your default will be recorded, the said petition will be taken as confessed and you will be forever barred from contesting said petition or any decree entered thereon."

Frank Kozdras took his notice to an attorney who advised him that since he was an abutter, he did not have to do anything with regard to the registration of the land or concern himself further with it. Frank Kozdras, therefore, filed no appearance in the Land Court proceedings, which culminated with the entry of a decree on May 24, 1973, for the confirmation and registration of title of the Associates in and to the land involved in the petition.

Two years later, in 1975, the Kozdrases learned for the first time that the petition by the Associates for the confirmation and registration of title, the description of the land covered thereby, and the Cyr plan filed with the petition, had included 12 acres of land actually owned by them. On

order of the motion judge, we express no view on the failure to send her notice. No reason appears for this lapse by the Associates.

[10] There is little difference between giving no notice to the rightful owners and giving notice falsely listing them as abutters rather than as persons having an interest in the land in question.

November 19, 1975, the Kozdrases commenced the present proceeding by a complaint which concluded in part that the Associates "knew or had reason to know that part of the land which they were seeking to register belonged to the plaintiffs [the Kozdrases], or that the plaintiffs claimed an interest therein"; that the Associates' Land Court petition "did not disclose that they knew that the plaintiffs claimed an interest in said land sought to be registered"; and that the Associates "were under a duty to disclose in said petition all adverse interests claimed in said lands, whether they be legitimate or otherwise."

The Associates filed a motion for summary judgment on the issue of the Superior Court jurisdiction "to entertain the action." After the motion for summary judgment was heard, the motion judge limited the plaintiffs to the issue of fraud. See note 3, *supra*. The matter was tried before a judge of the Superior Court, jury waived, and the judge made the following findings. "The petition for registration contains statements which are not true. The certificate concerning adjoining owners is not true. The sketch with the certificate concerning adjoining owners is not true.

"The Land Court Plan filed by defendants is erroneous. It does not show the land and its ownership as it really is in fact.

"Twelve acres belong to the plaintiffs. In this trial before me defendants made no real denial of this. They now know it is so. The testimony of the Title Examiner engaged by the plaintiffs clearly shows that the land belongs to the plaintiffs. An analysis of the Assessor's Plans shows that the land belongs to the plaintiffs.

"There is no intentional wrongdoing. But statements were made by the defendants through their agents in the petition to register the land as above set forth which are contrary to fact yet susceptible of accurate knowledge. These statements were made as of defendants' own knowledge, but without such knowledge. They are technical and/or constructive fraud.

"Plaintiffs relied on the statements in notice which resulted from statements in Land Court petition. The defendants have land to which they have no right or justifiable claim. The untrue statements, which amount to technical fraud, lulled the plaintiffs into inaction. These statements remain active and important throughout registration. They materially affect the outcome. When one listens to the Title Examiner testify and studies her plan, it seems incredible that this could have happened. What is said here is not read in any way as any reflection on the Land Court. The Land Court was put in the same position as were the plaintiffs." The trial judge concluded that the conduct of the Associates required them to reconvey the land to its rightful owners.

The record before the judge and before us reveals that there are no bona fide purchasers involved with the registered land, and that these proceedings are solely between the Associates who registered the land and the plaintiffs who in fact owned the land.

The issue raised by this appeal is whether the foregoing facts support a conclusion that the Associates acted "with such wilful disregard of the facts as to be tantamount to fraud." *State St. Bank & Trust Co.* v. *Beale*, 353 Mass. 103, 104 (1967). In the *State St. Bank* case, we concluded that the plaintiff was entitled to restitution where the defendant had failed to notify the plaintiff and the Land Court of the plaintiff's ownership interest in the land being registered, and where false affidavits were filed in the Land Court. We said that "the affiant, who was familiar with the actual facts, made the affidavit either with intent to defraud the Land Court or with such wilful disregard of the facts as to be tantamount to fraud." *Id.* In holding that G. L. c. 185 does not bar an equitable remedy in cases involving fraud, we noted that there was no legislative policy against the traditional remedy of restitution as between the person fraudulently registering the land and the preregistration owner. We therefore followed the general rule that the land title registration system does not permit an imperfect

title to be perfected by fraud. See, e.g., *Rock Run Iron Co.*
v. *Miller*, 156 Ga. 136, 141 (1923); *In re Sanborn*, 57 Haw.
585, 591-592 (1977); *Chicago Title & Trust Co.* v. *Darley*,
363 Ill. 197, 203-204 (1936); *Baart* v. *Martin*, 99 Minn. 197,
206-213 (1906); *Kirk* v. *Mullen*, 100 Or. 563, 574 (1921).

While the facts in the case at bar are not so egregious[11] as
the facts in the *State St. Bank* case, we agree with the judge
that the statements made by the defendants in their petition
were "contrary to fact yet susceptible of accurate knowl-
edge," and that the Associates' disregard of the facts as
shown by the official records brings this case within the am-
bit of our language in *State St. Bank & Trust Co., supra.*
The evidence is sufficient to show that the Associates made
false statements, and the evidence is overwhelming that the
Associates acted in reckless disregard of the actual facts. At
no time did the Associates disclose to the Land Court or to
the Kozdrases that the Cyr plan did not conform to the of-
ficial plan on file in the assessor's office. The statements as
to the location of the Kozdrases' land were erroneous. The
Kozdrases relied on the false statements, and, as a result,
the Kozdrases' property was registered to the Associates.

Further, the Associates knew before purchasing the land
that receipts for taxes levied against the Fuller Farm Trust
indicated ownership of fewer acres than were shown on the
Cyr plan. The record does not indicate that they disclosed
this fact to the Land Court. The Associates should also
have been aware from their own records that, following the
registration, they were being assessed taxes on fewer acres
than they had registered. The record does not disclose

---

[11] In their complaint, the plaintiffs alleged that a representative of one
or more of the defendants attempted to purchase their property in 1969 or
1970, and failed. At trial the plaintiffs did not produce any evidence to
that effect. They also admitted that they had no reason to believe that the
Associates "had done anything which was intentional on their part,
knowingly to deny [the Kozdrases] the ownership of [their] property."
The judge concluded that there was "no intentional wrongdoing" and
limited his consideration of the facts to statements made in wilful
disregard of the actual facts.

whether the Associates corrected this error with the taxing authorities.[12]

It is the general rule that "[i]f a statement of fact which is susceptible of actual knowledge is made as of one's own knowledge and is false, it may be the basis for an action of deceit without proof of an actual intent to deceive." *Pietrazak* v. *McDermott*, 341 Mass. 107, 110 (1960). See *McMahon* v. *M & D Builders, Inc.*, 360 Mass. 54 (1971); *Maxwell* v. *Radcliffe*, 356 Mass. 560 (1969). We adhered to that rule in *State St. Bank & Trust Co.*, *supra*, and held that statements made in wilful disregard of the facts, if proved, would be sufficient to require a registrant to reconvey to the preregistration owner land registered as a result of such false statements. We conclude that the Associates had actual knowledge of a discrepancy between the assessor's plan and the plan filed by them, see note 4, *supra*. In spite of this discrepancy, the Associates disregarded facts susceptible of actual knowledge. Thus, the plan filed by the Associates was false. Such wilful disregard of the actual facts is fraud. See *State St. Bank & Trust Co.*, *supra* at 104. Therefore, the Associates must reconvey to the Kozdrases the land which the Kozdrases formerly owned.

The Associates contend that to order reconveyance in these circumstances would undermine the Land Registration Act. We do not agree. The Massachusetts registration statute is a direct descendant of the Australian Torrens System. *McQuesten* v. *Commonwealth*, 198 Mass. 172, 177 (1908). Sir Robert Torrens modeled his statute on the procedures used by the British Ships Registry in recording ownership interests in ships. B. Schick & I. Plotkin, Torrens in the United States 17 (1978). The intent of the statute was to simplify land transfer and to provide bona fide purchasers with conclusiveness of title. See *Baart* v. *Martin*, *supra* at 205. In 1891 the potential benefits of the Torrens system were articulated by Governor William E. Russell in

---

[12] In fact, the Kozdrases were assessed by the town for taxes on the land from the time of their purchase in 1954 through 1976.

his inaugural address. St. 1891, at 1110, 1130. The need addressed by the Governor was reform of the existing land transfer system. In a special message to the Legislature, Governor Russell suggested that the proposed system would ensure that "transfers can be made quickly, easily and at small expense; and, further, there is absolute security in the possession of the premises *bought,* resulting from the indefeasibility given to the certificate of title issued by the state" (emphasis supplied). St. 1891, at 1147.

The Torrens system was deemed advantageous since "[t]he difficulty with the old system is that no one can be absolutely certain whether he is buying a good title or a bad one. . . . The great purpose of the Torrens System is to rid land titles of this peril, for with its disappearance disappears all the expense, trouble and delay that attend running the title back through previous transfers." Hurd, Exposition of the Torrens System of Registration of Title, in The Torrens System of Registration and Transfer of the Title to Real Estate 88-89 (Yeakle ed. 1894).

A report published in Massachusetts just after the new land registration act was passed expressed hope that the system would provide an answer to the problem, "arising as far back in our history as the time when our ancestors first settled on the shores of Massachusetts Bay, providing a safe and practicable method 'for avoyding all fraudulent conveyances, & that every man may know what estate or interest other men may have in any houses, lands, or other hereditaments they are to deal in.'" C. Rackemann, The Land Registration Act of Massachusetts xviii, xix (1898), quoting from 1 Records of the Governor and Company of the Massachusetts Bay in New England, 1640, at 306 (Shurtleff ed. 1853).

It is clear from the history of the Torrens system that the underlying purpose of title registration is to protect the transferee of a registered title. There are no transferees or bona fide purchasers involved in this case. Thus, our decision today does not threaten the integrity of the Massachusetts land registration system. "The purpose of land

registration is to provide a means by which title to land may be readily and reliably ascertained. . . . But these benefits of the registration system are intended primarily for those who act in good faith. It is not a purpose of the system to afford those who deal with registered land in bad faith any greater protection than they would have in similar dealings with unregistered land." *State St. Bank & Trust Co.* v. *Beale*, 353 Mass. 103, 107 (1967).

A petitioner in the Land Court who fails to disclose a major discrepancy between the plan submitted and official records may not profit from such nondisclosure. There is no integrity in a system which permits petitioners to submit their own plans to the Land Court knowing they are in variance with official records and then reap benefits at the expense of those who rely on the integrity of the submitted plan.

We emphasize again that in this case there are no bona fide purchasers of registered land to be protected and no evidence of any change in position by the Associates.[13] There was, therefore, no error in requiring the Associates to convey the Kozdrases' land back to them. "Since the remedy of restitution operates only against the person who has committed the fraud, our holding does not run counter to the land registration act's purpose of furnishing good faith purchasers with a ready and reliable means of ascertaining title to land." *State St. Bank & Trust Co., supra.*

The Land Registration Act is a system of conveyancing, not a means for defrauding rightful owners of their property. The Torrens System merely permits correction of defective official record titles. It does not permit registrants to ignore official records which are not defective. Restitution in this case leaves the Land Court judgment intact, and merely requires the Associates to give back to the plaintiffs land which had been owned by them since 1954.

*Judgment affirmed.*

---

[13] The Associates could have suggested (but did not) to the judge that in the event he found for the plaintiffs, damages would be a more appropriate remedy. Since land is unique, and the Associates failed to show any special circumstances warranting damages, reconveyance is the more appropriate remedy.

QUIRICO, J., (dissenting, with whom Wilkins, J., joins). The court today holds that a party whose land has been registered to another may, through collateral proceedings, successfully attack the decree of registration without proving any fraudulent intent on the part of the registrant. I disagree on two grounds. First, I think that the effort to bring this case within the rule of *State St. Bank & Trust Co. v. Beale,* 353 Mass. 103 (1967), has forced the court to rely on a number of assumptions which are unsupported by the record before us. Second, and more fundamentally, I do not believe that by its use of the word "fraud" in G. L. c. 185, § 45, and elsewhere in the Land Registration Act, the Legislature intended to authorize collateral attack on decrees of registration in circumstances like those presented here. In my view, today's decision creates an exception to the comprehensive scheme enacted by G. L. c. 185, §§ 26-56A "almost as broad as the scope of the general rule otherwise contained in that [chapter]." *National Academy of Sciences* v. *Cambridge Trust Co.*, 370 Mass. 303, 313 (1976) (Wilkins, J., dissenting in part). The extension of the doctrine announced in the *State St. Bank & Trust Co.* case to the facts of this case leaves entirely unclear the degree of care a would-be registrant of title must exercise to obtain the benefits of the land registration procedure provided by the Legislature. The result reached by the Superior Court, and today affirmed by this court, thus injects into our system for land registration precisely the element of uncertainty and the concomitant potential for litigation that the system was designed to protect against.

To understand what is at stake in this case, it is necessary to expand somewhat on the court's account of the facts giving rise to this controversy. Some time prior to September, 1970, the Associates entered into negotiations with the "Fuller Farm Trust" for the purchase of a tract of unimproved land located in the town of North Andover. This tract, known as the "Fuller Farm," lies in an area of North Andover which had historically been a "common," an area of some three thousand acres in which, as the prior owner

put it, "everybody agrees the titles were bad and nobody knows who owns what." In the course of the negotiations with the Associates, Charles Cyr, a registered Land Court engineer, surveyed the estate held by the Fuller Farm Trust and prepared a plan of that estate displaying some 195 acres. According to uncontradicted testimony taken before the Superior Court judge, Cyr prepared the plan under the supervision of the seller and was paid eleven thousand ($11,000) dollars by the seller.

As the seller also testified in the proceeding below, the Cyr plan was the only survey of the Fuller Farm which was available at the time of the sale, there was no reason to assume it to be inaccurate, and the Associates relied on it. It is true that on sheet 3 of the plan, which set forth the Kozdrases' boundary, there is a discrepancy of some 60 acres between the area for which the Fuller Farm Trust held deeds and the area shown on the Cyr plan. The Associates apparently thought this discrepancy to be accounted for by the generally faulty state of title in the area and by the seller's claim of adverse possession. Significantly, the Land Court found that claim of adverse possession to be valid, a finding that has not been challenged except by the Kozdrases. Also significant is the fact that the twelve acres now claimed by the Kozdrases comprise less than a tenth of the entire parcel purchased by the Associates. In my view, there was sufficient evidence to support the Superior Court judge's finding that the inclusion of the Kozdras land in the Cyr plan did not result from any intentional wrongdoing on the Associates' part.

In any event, the Cyr plan was filed by the Associates with their petition for registration as their description of the land sought to be registered. See G. L. c. 185, § 28. The apparent reason for the registration proceeding was to ascertain the area of, and to settle title to, the land the Associates had purchased. There is nothing suspect or even unusual in this use of the land registration procedure. We have repeatedly recognized that a registration proceeding provides an appropriate forum for establishing a title ac-

quired by adverse possession. *Rothery* v. *MacDonald*, 329 Mass. 238, 242 (1952). *Hurlbut Rogers Mach. Co.* v. *Boston & Me. R.R.*, 235 Mass. 402 (1920). See *Keith* v. *Kennard*, 222 Mass. 398 (1916) (upholding registration of title gained by prescription).

The court suggests that the Kozdrases "rel[ied] on the integrity of the submitted plan," *supra* at 45, thereby clearly implying that the defect in the notice to the Kozdrases was caused by the defect in the Associates' registration petition. These conclusions reflect an incomplete understanding of the statutory procedure. The filing of the petition for registration merely initiates the registration proceeding; the Land Court is then charged with protecting the interests of persons who might be adversely affected by a decree of registration. After a petition is filed, the Land Court is required to refer it to an examiner of title who must then "search the records and investigate all facts stated in the petition, or otherwise brought to his notice, and . . . file in the case a report thereon, concluding with a certificate of his opinion upon the title." G. L. c. 185, § 37, as amended by St. 1977, c. 151, § 1. Section 37 at the time of this proceeding further provided that if the examiner's opinion proved to be adverse to the petitioner, the petitioner could nevertheless elect to proceed.[1] The Associates did so elect.

It was only at this point in the proceeding that notice to the Kozdrases was required. It is significant, however, that the required notice is based on the facts as stated in the examiner's report, not the petition for registration. This point is explicit in G. L. c. 185, § 38, which provided at the time of this proceeding that "the recorder shall, immediately upon the filing of the examiner's opinion, or upon the filing of the petitioner's election, as the case may be, cause notice of the filing of the petition to be published in a newspaper published in the district where any portion of the land lies."

---

[1] The 1977 amendment to § 37, see note 7, *supra,* has eliminated the requirement that a petitioner elect in writing to proceed further following an adverse report from the title examiner. This change is not relevant here.

The published notice must name "all persons known to have an adverse interest," as well as all adjoining owners and occupants. "The court shall also, within seven days after publication of said notice in a newspaper, cause a copy thereof to be sent by the recorder by mailing a registered letter to every person named therein whose address is known." G. L. c. 185, § 39.

The Kozdrases' status as an abutter seems clearly to have been a "[fact] stated in the petition" within the meaning of § 37, and thus within the scope of the examiner's mandatory investigation. That the discrepancy between the Cyr plan and the official records escaped both the Associates and the Land Court is, as the Superior Court judge put it, "incredible." Neither party put the examiner's report on the record, and in its absence, I do not mean in any way to question its accuracy. As it stands, however, the record before us shows only that the Associates' petition for registration included an error in their description of the land sought to be registered, and that that error was somehow incorporated into the notice received by Frank Kozdras.

This case is thus wholly distinguishable from *State St. Bank & Trust Co.* v. *Beale, supra,* which the court cites as controlling. That case involved the sufficiency of a bill in equity filed in the Land Court by the plaintiff, alleging that the defendant had perpetrated a fraud on the court resulting in the issuance to him of a certificate of title to a parcel of land which he knew at all times belonged to the plaintiff. The alleged fraud included the following acts by the defendant: (a) falsely stating in his petition for registration that he did not know of any other persons having an interest in the property when he knew that the plaintiff was the owner thereof, with the result that the published notice of the petition did not name the true owner and no registered mail notice was sent to the owner, and (b) obtaining two affidavits, which the defendant knew to be false, that he and predecessors in interest had acquired title to the property by adverse possession. The judge of the Land Court held that this was in the nature of a petition for review under

G. L. c. 185, § 45, which was not seasonally started within one year after the entry of the decree of registration, and further that the Land Court had no jurisdiction to award damages in equity for fraud in procuring the decree, and he therefore sustained the defendant's demurrer. This court held that to be error: "It is well settled that a traditional remedy for a person who has been deprived of land through fraud is specific restitution. 'A person who has tortiously acquired or retained a title to land . . . is under a duty of restitution to the person entitled thereto.' Restatement: Restitution, § 130. The duty to make such restitution is often enforced by imposing a constructive trust. In *Barry* v. *Covich*, 332 Mass. 338, [342 (1955)], we said, 'A constructive trust may be said to be a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property was obtained by fraud . . . .' Restatement: Restitution, § 160." *State St. Bank & Trust Co., supra* at 105.

In reaching the result described above in the *State St. Bank & Trust Co.* case, this court relied in part on the fact that G. L. c. 185 provides (a) in § 45, that "any person aggrieved by such decree [of registration] in any case may pursue his remedy in tort against the petitioner or against any other person for fraud in procuring the decree," (b) in § 62 which deals with the presentation of the owner's duplicate certificate upon the transfer of registered land, that "[i]n all cases of registration procured by fraud, the owner may pursue all his legal and equitable remedies against the parties to such fraud," and (c) in § 75, that "[w]hoever claims an interest in registered land by reason of any implied or constructive trust shall file for registration with the assistant recorder a statement thereof containing [specified information]."

As is evident from this discussion, the *State St. Bank & Trust Co.* case involved a deliberate plan by the defendant to seize title to a parcel of land which he knew belonged to the bank. He pursued a preconceived plan to impose a fraud on the Land Court by withholding the name of the

known owner of the property, and then filing false affidavits as to adverse possession, one executed by an assessor who swore to facts which he and the defendant knew were false. The differences between that case and this are, to my mind, differences not of degree, but of kind. First, the error in the Associates' petition did not put the Land Court "in the same position as were the plaintiffs," a finding made below and quoted by the court with apparent approval, *supra* at 41. The court's notice to the Kozdrases was presumably based on its own investigation of the Associates' petition. Second, although the court today repeatedly speaks in terms of "knowing," "wilful," or "reckless" actions on the part of the Associates, I think the judge's finding that the Associates were guilty of no intentional wrongdoing is supported by the record, and thus binding on this court. The Associates' failure to investigate fully the boundaries shown on the Cyr plan can plausibly be explained by the fact that they thought any record discrepancy would be accounted for by their claim of adverse possession. Third, nothing which the Associates did in the present case deprived Kozdras of notice of the Land Court proceedings. The name "Frank Kozdras" appeared near the beginning of the legal notice which was published in an area newspaper, and the name "Kozdras" appeared in the body of the notice. A copy of the notice was mailed to Frank Kozdras by registered mail, and was actually received by him. The notice expressly referred to a plan which had been filed with the petition and which showed the land sought to be registered. The notice expressly informed Kozdras and other persons named as follows: "If you desire to make any objection or defense to said petition you or your attorney must file a written appearance and an answer under oath . . . in the office of the Recorder of said Court in Boston . . . or in the office of the Assistant Recorder of said Court at the Registry of Deeds at Lawrence . . . where a copy of the plan filed with said petition is deposited, on or before the twenty-third day of August next."

Kozdras took his copy of the notice of the Land Court proceeding to an attorney for professional advice. He was

aware of his right to file an appearance and answer, but, believing that his land was not affected, he elected not to do so. An examination of the plan filed with the Associates' petition might have alerted Kozdras to the fact that it actually included the Kozdras land in that proposed to be registered as the land of the Associates. His failure to examine the plan and to file an appearance and answer in the Land Court resulted ultimately in the entry of a default against him, and the entry of the decree declaring the Associates to be the owners of what had theretofore been the Kozdras land. "One who has neglected to take the necessary and essential steps provided by a statute creating a remedy [in the instant case, G. L. c. 185, § 41, permitting the filing of an appearance and an answer] has no right to the remedy." *St. George's Church* v. *Primitive Methodist Church*, 315 Mass. 202, 204 (1943) (involving the failure of a party to file a sworn statement of its adverse claim in a Land Court proceeding).

I therefore think that today's opinion must be read as squarely adopting the doctrine of "constructive" fraud as a ground on which to attack a decree of registration. This court has recognized the doctrine of either "technical fraud" or "constructive fraud," or both, in a number of decisions. Many of the cases on this point were cited or discussed most recently in our opinion in *National Academy of Sciences* v. *Cambridge Trust Co.*, 370 Mass. 303, 308-310 (1976). We pointed out there that this doctrine "has been developed primarily in the context of actions seeking rescission of contracts and of tort actions for deceit." *Id.* at 309. Those actions usually involved a situation where a person purported to speak of his own knowledge about a fact which was capable of ascertainment, and about which the speaker had no such knowledge and his statement was not true. In that decision we cited the case of *Page* v. *Bent*, 2 Met. 371, 374 (1841), where the court said: "The principle is well settled, that if a person make a representation of a fact, as of his own knowledge, in relation to a subject matter susceptible of knowledge, and such representation is not true; if the

party to whom it is made relies and acts upon it, as true, and sustains damage by it, it is a fraud and deceit, for which the party making it is responsible."

In *National Academy of Sciences, supra* at 309, we then noted that "an analogous standard might be applicable to misrepresentations in the accounts of fiduciaries" and then cited several cases applying that "analogous standard." The vital basis for all such cases was the existence of a fiduciary relationship between the person who allegedly made the misrepresentation and the person who claimed to have been damaged thereby. There was no such relationship in this case between the Kozdrases and the Associates. Instead, they were adversaries in a judicial proceeding. There is nothing in the record to indicate that the Associates violated any fiduciary duty which they owed to Kozdras.

More important than the result in this specific case, however, is the extent to which today's decision impairs the carefully balanced system of rights and remedies contained in the Land Registration Act as a whole. The statutory provisions and the prior decisions of this court, as well as other relevant commentary, all emphasize the preeminence of the policies of certainty and finality there embodied. Today's recognition of "constructive" or "technical" fraud as an exception to those policies in my opinion represents a drastic and unwarranted inroad into the legislative scheme.

In our prior cases, we have said that a petition for the registration of title to land is "a proceeding *in rem* dealing with a tangible *res* [and it] may be instituted and carried to judgment without personal service upon claimants within the State or notice by name to those outside of it, and not encounter any provision of either Constitution [State or Federal]. Jurisdiction is secured by the power of the court over the *res.*" *Tyler* v. *Court of Registration*, 175 Mass. 71, 75 (1900). It is "a judicial proceeding to clear titles against all the world . . . , for the very meaning of such a proceeding is to get rid of unknown as well as known claims." *Id.* at 73. "Registration is the act which passes title and is the act of the court. . . . The purpose of registration law is to

bind the land and to quiet title to it. Registration is conclusive upon every one, with a few exceptions not material to the issues in this case, and the rights of innocent purchasers for value are given special protection. . . . Persons dealing with the land in the future may rely on the files at the registry and the interests of no one require changes in the records." *Malaguti* v. *Rosen,* 262 Mass. 555, 567-568 (1928). General Laws c. 185, has been described as "a statute that is . . . an elaborate legislative plan for the registration of titles to land, where, subject to certain exceptions, all rights of ownership and interests in the land are shown by certificates of title." *St. George's Church* v. *Primitive Methodist Church,* 315 Mass. 202, 205 (1943).

Much the same point is made by nonjudicial commentators on the system. "The Torrens System, developed because of the need of a judicial process for forever settling the title to real estate, establishes an indefeasible title that is free of all claims, so that anyone dealing with the property can be sure that the only claims on the property are the ones that are registered (with some minor exceptions as specified in the statute [G. L. c. 185, § 46]). The system takes much of the uncertainty and expense out of title searching. Uncertainty is taken out by the judicial decree which cuts off all speculation or doubts as to the title's validity as of the time of the decree. Money and time are saved by the short title search made possible by the decree." G.P. Davis, Massachusetts Conveyancers' Handbook § 125, at 193-194 (2d ed. 1967).

The circumstances in which collateral attack on a decree of registration is permitted by the statute are accordingly limited. General Laws c. 185, § 38, as amended by St. 1977, c. 151, § 2, prescribes the form of the notice of the filing of the petition. The notice is required to name all persons known to have an adverse interest in the property in question, and is then addressed generally "to all whom it may concern." The notice contains a description of the land. It informs persons desiring to object that they must file a written appearance and an answer at a stated office of

the court where a copy of the plan filed with the petition is on file; and it warns that unless such an appearance is so filed a default will be recorded, the petition will be taken for confessed, and the party "will be forever barred from contesting said petition or any decree entered thereon." General Laws c. 185, § 42, states that "[b]y the description in the notice, 'to all whom it may concern', all the world are made parties defendant and shall be concluded by the default and order [that the petition be taken for confessed]." It provides further that "[a]fter such default and order, the court may enter a decree confirming the title of the petitioner and ordering registration thereof."

General Laws c. 185, § 45, states that the "decree of confirmation and registration . . . shall be conclusive upon and against all persons, including the commonwealth, whether mentioned by name in the petition, notice or citation, or included in the general description 'to all whom it may concern'. *Such decree shall not be opened by reason of the absence, infancy or other disability of any person affected thereby, nor by any proceeding at law or in equity for reversing judgments or decrees; subject, however, to the right of any person deprived of land, or of any estate or interest therein, by a decree of registration obtained by fraud to file a petition for review within one year after the entry of the decree, provided no innocent purchaser for value has acquired an interest . . . . But any person aggrieved by such decree* [of registration] *. . . may pursue his remedy in tort against the petitioner or against any other person for fraud in procuring the decree*" (emphasis supplied).

These provisions of the statute, as well as our prior decisions based upon them, indicate to me that proof of something more than inadvertence is required to overcome the finality of a decree of registration. The instant case is an anomaly; the petitioners, the court, and the Kozdrases all failed to discover the error in description, and as a result the statutory safeguards against such errors failed. In the absence of proof of intentional wrongdoing, however, I believe that the Legislature intended that a decree of registra-

tion, once final, be immune to collateral attack.[2] I am not unsympathetic to the Kozdrases' plight, nor do I mean to condone the morality of the position now taken by the Associates. Here, however, we are called upon to ascertain and enforce the intent of the Legislature as expressed in a statute, not to decide as an initial matter whether the Associates should be held liable for their actions or inaction. Cf. *National Academy of Sciences* v. *Cambridge Trust Co.*, *supra* at 313-314 (Wilkins, J., dissenting in part). Because I cannot agree that today's opinion does justice to the letter and spirit of the land registration statute, G. L. c. 185, I dissent.

---

[2] I note in this regard that the possibility of losses arising through "error, omission, mistake or misdescription," G. L. c. 185, § 101, did not escape the Legislature's attention; the Assurance Fund established by G. L. c. 185, § 99-109, creates a remedy specifically directed to such losses without sacrificing the other benefits of the registration system. The section strengthens my belief that the Legislature intended to distinguish "fraud" from "error, omission, mistake or misdescription," a distinction largely erased by today's decision.